STATE ex rel. LEWIS AND ALLEN vs. FAIRCHILD, GOVERNOR, and others, Building Commissioners, etc.

MANDAMUS : *Rules of Practice in Supreme Court.* "BUILDING COMMISSIONERS," *under chap.* 59, *Laws of* 1866 : *their powers in letting contract.*

1. The board of building commissioners for completing the state capitol (chap. 59, Laws of 1866) had power to prescribe, in their notice of the letting of the contract, any reasonable formality to be observed by bidders ; as, that all proposals should specify the names of the sureties offered, with the written consent of the persons so named.

State ex rel. Lewis and Allen vs. Governor and others.

2. Parties whose proposals were not accompanied by any such written consent, were not entitled to have the contract awarded to them, although the lowest bidders, and although they "were present at the opening of the bids for the purpose of furnishing whatever securities were required," and "responsible persons were present with them for the purpose of giving their written consent to the use of their names as sureties."

8. Under the present rule of this court, *mandamus* proceedings must be commenced by a motion for an alternative writ, and not by a motion for a rule to show cause, etc.

APPLICATION for a *Mandamus.*

*Alden S. Sanborn* (with whom was *J. C. Hopkins*, of counsel), for the relators.

*The Attorney General, contra.*

COLE, J.   This was an order granted in vacation by a justice of this court, requiring the board of building commissioners for completing the state capitol to appear and show cause why a peremptory writ of *mandamus* should not issue out of this court, commanding them to award and let the contract for the building and completion of the rotunda of the state capitol to the relators, *Lewis* and *Allen.*   This order was improvidently granted, being in violation of a rule of court recently adopted, which provides that cases of *mandamus* shall be commenced in this court only by the issuing of an alternative writ.   In some cases the court has, on a rule to show cause why a *mandamus* should not issue, granted a peremptory writ, the rule performing the office of an alternative writ.   But this practice is abrogated by the rule of court just referred to.   The proper practice now is to apply for an alternative writ in the first instance.   The rule of court likewise provides that this court will not issue an alternative writ in cases where the circuit court has concurrent jurisdiction, except where some good reason is shown why the application is not made to the circuit court.   (See

opinion in case of *State ex rel. Board of Education v. Haben*, ante, p. 101.) A sufficient reason is shown in this case for applying to this court instead of the circuit; and therefore no objection can be taken that the application does not fully come within the rule in that regard. And as the parties have seen fit to treat this as a motion for an alternative writ, the application will be so considered and decided by the court. Should, then, an alternative writ issue on the relation?

It is objected on behalf of the board of commissioners that the writ should not issue, because, it is said, the awarding and letting of any contract to complete the rotunda of the state capitol is a matter clearly and purely discretionary with the commissioners. It is said that there is no obligation resting upon the building commissioners to proceed and let the contract for the completion of the work on the rotunda, and that they may decline to let it to any one, if, in their judgment, the best interests of the people of the state will be promoted by their doing so. If this is a correct view of the power vested in the commissioners by the various acts of the legislature upon the subject, it of course furnishes a sufficient answer to the application. For it probably would not be contended, that a *mandamus* should issue to enforce the exercise of a discretionary or voluntary act, or power, when the matter is left wholly to the discretion of the commissioners. But whether the awarding of the contract was a matter resting wholly in the discretion of the commissioners, is a question we shall not attempt to decide; since, upon the facts stated in the application, we are of the opinion that the relators are not entitled to the writ.

It appears from this application, that the building commissioners, in pursuance of the acts of the legislature, advertised in the "State Journal," a newspaper printed in Madison, for sealed proposals for completing the work on the

rotunda according to certain plans and specifications. It was stated in this printed notice that a bond, in the penal sum of at least half of the whole sum to be paid for doing the work, would be required of the party to whom the contract should be awarded, with sufficient sureties to be approved by the commissioners, conditioned for the prompt and faithful performance of the contract; "*and that all proposals must specify the names of such sureties proposed to be given, with the written consent of such persons to the use of their names for that purpose.*" Now it appears that in the sealed proposals made and sent in by the relators, there was no written consent of any one to the use of his or their names as a surety upon the bond. In other words, their bid failed to comply, in a most essential particular, with the printed requirements of the commissioners. We therefore think it was properly disregarded by them, on account of this informality.

We have no doubt that it was entirely competent for the commissioners to prescribe any reasonable formality to be observed by bidders. They required that all proposals should specify the names of the sureties proposed to be given, with the written consent of such persons to the use of their names for that purpose. This seems to us a very reasonable requirement; and if it could be disregarded by the bidder, why not dispense with all the requirements in the printed notice? There is no more propriety in dispensing with one positive requirement than another. All bidders were informed what their bids should contain to render them formal. And they had no right to presume that any bid would be received by the board except such as complied with the printed requirements. It is stated in the application that the relators were present at the opening of the proposals, for the purpose of furnishing whatever sureties were necessary and required in the premises, and that certain

responsible persons were likewise present with them, for the purpose of giving their written consent to the use of their names as sureties. But no matter. It was too late to perfect their bid. Suppose, after the proposals were opened, some other bidder had requested the privilege of withdrawing his bid for the purpose of reducing it; would it have been the duty of the commissioners to allow it to be done? No one would contend that it would be proper for them to do so. And yet, as already remarked, if they could dispense with one positive requirement of their printed notice, why not disregard all? Why not permit all bidders to withdraw, alter, and modify their proposals as they might desire, after the bids were opened, or the time for receiving them had expired?

The relators' proposals, being informal and irregular, could not properly be considered by the commissioners.

*By the Court.*—The motion for an alternative writ of *mandamus* is denied.