JOHN BINEWICZ v. CHARLES F. HAGLIN.[1]

February 28, 1908.

Nos. 15,399—(164).

**Directed Verdict Sustained.**

Plaintiff, employed as an ordinary shoveler, was directed to assist in taking heavy timbers from the first floor to the second floor of a building defendant was constructing. A few hours after he had been seen standing on some small boards he was found in the basement underneath seriously injured. He was called as a witness, but his memory had been destroyed. His wife testified to donations and promises of future assistance by defendant, and to admissions by defendant that the accident had been his fault, and not plaintiff's. No eyewitness was produced. There was no direct testimony as to how the accident happened, or what caused

[1] Reported in 115 N. W. 271.

it. The order of the trial court directing a verdict for the defendant is sustained.

Action in the district court for Hennepin county by plaintiff's guardian ad litem to recover $15,000 damages for personal injuries. The case was tried before John Day Smith, J., who directed the jury to return a verdict for defendant. From an order denying plaintiff's motion for a new trial, he appealed. Affirmed.

*H. E. Fryberger* and *T. N. Jayne,* for appellant.

*Hale & Montgomery,* for respondent.

JAGGARD, J.

Plaintiff and appellant was hired by defendant and respondent as an ordinary shoveler. A few hours before he was hurt, defendant directed him to assist in taking heavy timbers from the first floor to the second floor of the building defendant was constructing. Plaintiff had been, between four and five hours before the accident, standing on some small boards. Some time later he was found in the basement beneath. He had struck his head upon a stake, crushed his skull, and suffered other serious injuries. He was called as a witness; but his memory had been destroyed, and he knew nothing of what had occurred. Plaintiff's wife, who talked little English and understood it imperfectly, testified that after the injury defendant paid her a considerable sum weekly and promised future assistance. She also testified that he said to her: ' Don't cry, I know it was my fault, not your man's. I know your man was hurt bad. That was not your man's fault. The payments to the wife decreased, and finally ceased. The defendant was in court at the time of the trial, but did not explain, qualify, or deny the wife's testimony. He was cross-examined under the statute as to the name and whereabouts of an eyewitness only. Verdict for defendant was directed. This appeal was taken from an order of the trial court denying plaintiff's motion for a new trial.

We are of opinion that the trial court's conclusion was correct. There was no evidence that the master was actionably negligent in not supplying a reasonably safe place in which to work; for it was

not shown where plaintiff was standing at the time of his fall. That the boards on which he had at one time stood were small, warped, and unfastened, and that the master may have been negligent in this regard, is not shown to have been the proximate cause of the injury. The testimony that plaintiff was a day laborer, wearing heavy, thick-soled shoes, and that he had grown clumsy and slow in his movements and was put to new work, was proper enough descriptive matter, but did not show negligence on defendant's part which produced the harm he suffered. Of course, the mere happening of an accident was not evidence of negligence.

The essential question in the case is whether under these conditions liability may be predicated upon defendant's admissions, donations, and promises of assistance. The paucity of specific authorities on the subject is significant. On the one hand, it was, however, held in Kitchen v. Robbins, 29 Ga. 713, that admission of an innkeeper that his guest has lost goods in his house, when proven by a witness who heard the admissions is sufficient proof of the fact of loss to authorize the introduction of evidence to show the amount of the loss, although the innkeeper, when put on the stand as a witness by the other party, may state that the admissions by him were founded solely on statements made to him by the plaintiff. In Barber's Adm. v. Bennett, 60 Vt. 662, 15 Atl. 348, 1 L. R. A. 224, 6 Am. St. 141, an assignee sued in assumpsit for a board bill. The defense introduced admissions of the creditor that defendant had paid his board. It was held that the declarations of a party in interest, when relevant to the issue, are admissible and competent as tending to prove a defense, and that it was error to limit such declarations to merely impeaching testimony. On the other hand, in Swift v. Grant, 90 Mich. 469, 51 N. W. 539, it was held that, if the defendant was not legally liable by reason of his negligence, his admission, if made, would not create such liability.

No case has been called to our attention, nor have we been able to find one, in which liability for negligence has been based on admissions alone. This conforms to the general conception of the nature of admissions as evidence. Prof. Wigmore says: "The primary use

and effect of an admission is to discredit a party's claim by exhibiting his inconsistency in other utterances. It is therefore immaterial whether these other utterances would have been independently receivable as the testimony of a qualified witness. It is their inconsistency with the party's present claim that gives them logical force, and not their testimonial credit." 2 Wigmore, Ev. p. 1222, § 1053. "An admission * * * is nothing but a piece of evidence, discrediting the party's present claim, and tending to prove the fact of its incorrectness. It is therefore to be distinguished from those statements of the party which become in themselves the foundation of independent rights for other persons by virtue of some doctrine of substantive law; in other words, from binding estoppels, warranties, and representations." Id. p. 1224, § 1056.

Admissions tending to show negligence are usually received in evidence. Gulf v. Calvert, 11 Tex. Civ. App. 297, 32 S. W. 246; Cooper v. Central, 44 Iowa, 134; Helman v. P. C. C. & St. L. Ry. Co., 58 Oh. St. 400, 50 N. E. 986, 41 L. R. A. 860. Courts, however, quite generally refuse to give to them any final or conclusive effect. "Slight credit will be given to the unsupported evidence of a witness who testifies to admissions obtained by him from a party for the purpose of charging him thereby." Sunday v. Gordon, Fed. Cas. No. 13,616, 1 Blatchf. & H. 569. And see Dreher v. Town, 22 Wis. 675, 99 Am. Dec. 91; Allen v. Young, 6 T. B. Mon. (Ky.) 136, 17 Am. Dec. 130. Cf. Higgs v. Wilson, 3 Metc. (Ky.) 337. But see 1 Shear. & Red. Neg. § 60a. "Testimony as to naked admissions, given by witnesses who, though not parties to the record, are in close sympathy and interest with the party calling them, is one of the most untrustworthy kinds of evidence." 1 Greenl. Ev. § 200. In Lench v. Lench, 10 Ves. 518, Sir William Grant says: "This is in all cases most unsatisfactory evidence, on account of the facility with which it may be fabricated and the impossibility of contradicting it. Besides, the slightest mistake or failure of recollection may totally alter the effect of the declaration." This was approved by the chancellor in Botsford v. Burr, 2 Johns. Ch. (N. Y.) 412, and by Story, J., in Smith v. Burnham, 3 Sumn. 435, Fed. Cas. No. 13,019. "Usually the witnesses

cannot give the precise language, nor the whole of it. A little difference of expression, or a slight qualification omitted, forgotten, or suppressed, might neutralize all its legal effect. In the cases above referred to, the absence of corroborative circumstances, with some countervailing proofs, were held sufficient ground for disregarding it, leading to the conclusion, as Story, J., observes, that 'there may have been some mistakes and misapprehensions, to say the least, on the part of the witnesses as to the purport and effect of the conversation in which they testified.'" Borland v. Zittlosen (D. C.) 27 Fed. 131, 134. "It is always for the court to consider what weight, if any, is to be given to an admission, or any other evidence. It is not conclusive merely because it is legally admissible." Bulley v. Bulley, 9 L. R. Ch. App. 739, 747. .

In determining what weight shall be given to admissions, courts consider two circumstances in particular—the extent of personal knowledge, and the character of the admission, whether concerning law or fact. An admission not based on personal knowledge may be admissible. Kitchen v. Robbins, 29 Ga. 713; Shaddock v. Town, 22 Wis. 110, 114, 94 Am. Dec. 588; Chapman v. Chicago, 26 Wis. 295, 303, 7 Am. 81; Wasey v. Travelers, 126 Mich. 119, 125, 85 N. W. 459; Sparr v. Wellman, 11 Mo. 230. But an admission evidently made without personal knowledge of the facts admitted, or a statement inconsistent and contradictory, indefinite or equivocal, and not elucidated by further proof, may have little or no weight as evidence. 16 Cyc. 1045. And see Maher v. Empire, 110 App. Div. 723, 96 N. Y. Supp. 496. An admission of a mere legal conclusion is not binding. Crockett v. Morrison, 11 Mo. 3 (collecting earlier cases at page 5); Rawlings v. Neal, 122 N. C. 173, 29 S. E. 93 (where the admission was of an erroneous proposition of law); City v. Beckman, 34 Mich. 125, 22 Am. 507 (where the court was held not bound to accept a concession on trial of the city's liability for the injury complained of). And see Reed v. McCord, 160 N. Y. 330, 54 N. E. 737, and Gulf v. Calvert, 11 Tex. Civ. App. 297, 32 S. W. 246 (in which an acknowledgment that the party was himself to blame was regarded as mere self-censure).

In the case at bar defendant's admission may not have been a mere sympathetic assurance; but it was not an admission of negligence or of liability. It bore no resemblance to a declaration admissible as a part of the res gestæ. Giving it the most favorable consideration— to which plaintiff without doubt is here entitled—it was in itself indistinct. It was given a long time after the conversation had taken place, and it concerned a subject-matter easily subject to misapprehension. It was proved by the wife of the unfortunate man, to whom accurate understanding was, for many reasons, difficult. While there is nothing in the record in any wise impeaching her truthfulness, her sympathy was necessarily intense, and her interest in charging the defense with liability pathetically great. In so far as the admission concerned facts, they were not within the defendant's personal knowledge. In so far as the admission concerned law, it cannot be determined whether the opinion was or was not erroneous. If it be assumed that the trial court was in error in excluding the testimony of the boy who acted as interpreter, and that his proffered evidence be considered as added to that of the wife, the situation would not be materially changed. Taking the testimony as to the condition of the accident and as to the admissions of fault as a whole, we do not think that the record shows reversible error in the rulings of the trial court.

The testimony concerning donations and promises of future assistance do not require the court to submit the case to the jury. Plaintiff quotes in this connection from Sias v. Consolidated, 73 Vt. 35, 40, 50 Atl. 554, 555: "Plaintiff was permitted to testify that the defendant furnished him a nurse. The testimony was offered as tending to show a recognition of liability, and the defendant objected to it as having no such tendency. The court below took the ground that it could not say as matter of law that it had no such tendency, but that it should be submitted to the jury for them to say whether, in view of all the circumstances, it had that tendency or not. That was right, if the case presented circumstances which tended to characterize the act as a recognition of liability; but we have found nothing of this nature in our examination of the testimony. It is doubtless true that such evidence might be offered in a connection that would

give it the effect claimed; but we think the mere fact that an employer furnishes a physician or nurse for one who meets with a disabling accident in his service ought not to be received as evidence tending to establish his liability." In the same case the court also said: "It must be the impulse of every humane employer to provide assistance for a disabled workman without means, and the rule of evidence ought to be such as to permit his doing it without danger to himself. Such an act should be treated as a humane recognition of an existing necessity, and not as an admission of the justice of a claim not then asserted." Whatever modification of this rule particular circumstances may require, those of the present case are fairly governed by this principle. The court heard and saw the witnesses. We think its refusal to allow this hard case to make bad law was legally proper.

Affirmed.