CHARLES H. WILSON *vs.* GEORGE J. DANIELS.

Worcester.    September 23, 1924. — December 1, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & WAIT, JJ.

*Negligence,* Employer's liability, In operation of corn husking machine, Assumption of risk, Contributory. *Evidence,* Admission; Opinion: expert. *Practice, Civil,* Exceptions.

At the trial of an action by a farm laborer against his employer for personal injuries received when his hand was caught in rollers while he was operating a corn husking machine, it was conceded by both parties that

the plaintiff's only rights were at common law. There was evidence tending to show that the plaintiff was fifty-two years of age, had worked for the defendant two years as a teamster, and was not familiar with machinery; that the defendant was familiar with machinery; that the plaintiff had worked at the machine in question only twice, and that on the previous occasion his hand had been caught in the same rollers but he had avoided injury by the use of a pedal which threw out a clutch to stop the machine; that when he tried to use the clutch appliance to stop the machine on the occasion of his injury, he was unable to do so because it was out of order; that the defendant had known it was out of order and had ordered it repaired, but was ignorant as to whether it had been repaired; that the plaintiff on the morning on which he was injured had objected to working on the machine because it was dangerous; that the defendant had assured him that it was safe and that there was no danger, and that the plaintiff under threat of discharge had continued his work; that the methods of securing the machine to the ground, of connecting it to the power of a tractor of greater weight, of the arrangement of cogs and application of power were such that when the rollers became clogged the machine would jump and endanger the hands of the feeder. The working parts of the machine were obvious to a person of intelligence. *Held*, that

(1) Testimony as to a conversation between the wife of the plaintiff and the defendant when the defendant said that he was sorry he put her husband on the machine, "that he thought the machine was all right, but it wasn't," properly was admitted;

(2) Testimony as to further statements by the defendant in the same conversation that "he would take care of him [the plaintiff] and look after him"; to the admission of testimony from the wife that the defendant, before leaving the house, said "not to have his hand taken off, and . . . he would be home in a couple of days," was incompetent and should have been excluded; and its admission was prejudicial to the defendant;

(3) The following question to a brother-in-law of the plaintiff and his answer should have been excluded because the evidence was a statement of opinion upon a matter of common knowledge and its admission was prejudicial error: "Q. From your intimate knowledge and acquaintance of him [the plaintiff], what would you say with reference, basing it upon your intimate knowledge and acquaintance of him, and his condition, your opinion would be as to his ability to work with any degree of profit or advantage on a farm? A. No."

(4) It was proper to refuse to give the following ruling: "The lack of an appliance used to stop the machine, or the failure to repair such appliance does not make the defendant liable unless a reasonably prudent man in the same circumstances ought to anticipate and expect that such lack or failure would result in this, or a similar, accident";

(5) It was proper to refuse to give the following ruling: "The plaintiff cannot recover unless he proves that the defendant did not act as a reasonably prudent man would have acted under the circumstances, and that the defendant should have reasonably expected that his failure to so act would probably result in this accident";

(6) Whether the husking machine was reasonably safe and convenient in view of its construction, the degree of its stability, the broken condition of the clutch, the method of application of power, and the tendency to jump, if any, was for the jury;

(7) The question, whether the defendant used the care of a reasonably prudent and careful man in allowing the plaintiff to work upon the machine without instruction or with only such instruction as from the evidence they might find was given, was for the jury;

(8) While the facts, that the plaintiff objected to being put at work on the husker and went on only to avoid discharge, did not prove conclusively that he did not assume risks, it was a question for the jury, whether, if he received the assurance from his employer to which he testified, he did appreciate the dangers attending the operation of the husker with its broken clutch, and so should be held to have assumed the risks;

(9) Whether the plaintiff by his own carelessness contributed to his injuries was for the jury.

There is no assumption of risk by an employee at common law unless he fully comprehends the defects and imperfections, and realizes the nature and extent of the danger, alleged to have been assumed.

The burden of proving that an employee assumed certain risks of injury rests upon the defendant in an action by the employee at common law, and the trial court rarely is warranted in ruling that the burden has been sustained.

TORT for personal injuries received by the plaintiff while working for the defendant as a farm laborer in the operation of a corn husking machine. Writ dated November 16, 1920.

In the Superior Court, the action was tried before *Burns*, J. Material evidence and exceptions saved by the defendant are described in the opinion. There was a verdict for the plaintiff in the sum of $5,000. The defendant alleged exceptions.

*J. A. Crotty,* for the defendant.

*C. E. Tupper,* (*W. A. Garrity* with him,) for the plaintiff.

WAIT, J.    The plaintiff's hand was caught in the revolving rolls of a corn husking machine, at which he was working for the defendant. The declaration charged negligence of the employer in furnishing a defective machine; and in putting the plaintiff at work in a dangerous place. The answer set up contributory negligence and assumption of risk. It was agreed that the plaintiff was a farm laborer, and that his only rights are at common law.

The plaintiff, when hurt, was feeding corn stalks to the husker. He stood upon a small platform at the side of the

machine, placed the stalks of corn, tips forward, in front of him upon a large platform thirty-two inches higher than that on which he stood, and pushed them along this surface and across an opening eight inches wide between the rolls and the platform, toward two rolls at his left. The rolls revolved toward each other, seized the stalks, and dragged them between the rolls, knocking off the ears of corn into the eight inch opening. The crushed stalks fell upon another platform behind the rolls. The ears of corn fell through the opening, struck upon four longer rolls which were set at an incline below the feeding platform, and, as they slid down, were stripped of their husks by the action of projections set on the surface of these inclined rolls. The drive shaft passed through the machine under the feeding table. The pulley was on the side away from the operator in front and to his left, while a gear on the end of the shaft on the side toward the operator and at his left, meshed with a larger wheel which controlled the upper rolls. When first set up there was a clutch at the left of the operator at the end of the drive shaft by which the wheel on the end of the roller shaft could be thrown out of gear with the wheel on the drive shaft. This clutch was operated by hand, or by a pedal. By using it, the rolls could quickly be stopped. Power was supplied through a five inch belt connected with a tractor which stood about twenty feet away from the husking machine to the right of the operator, and somewhat behind him when he faced the rollers. The husking machine weighed about eleven hundred pounds; the tractor, two or three tons. The machine was steadied against the drag of the tractor by stakes driven into the ground. There was evidence that, when the rolls were clogged by stalks, the machine would jump, and that at times the belt from the tractor came off the pulley as a result of the shifting in position accompanying a " jump." When purchased, in September, 1919, about two months before the accident, it was new, and of a standard make. The jury took a view of the husking machine.

The evidence was conflicting in regard to the number of times the plaintiff had operated the machine; but he testified

that he had run it only twice.    On the first of these occasions, a glove which he was wearing caught in the rolls and his hand was being dragged between them when he stepped on the pedal of the clutch, stopped the rolls, and escaped injury.    Exactly what happened on the second occasion is not clear.    The testimony of the plaintiff was not entirely consistent, but, beyond dispute, his gloved hand was caught, drawn in and crushed by the rolls as he was pushing stalks up to them.    The clutch appliance had been broken at some time between these two occasions, and on the day of the accident did not function.    The plaintiff testified that when he knew the hand was caught he applied the pedal, but it did not stop the rolls as it had done the week before.    The rolls, after the hand was drawn in, were stopped either by removing the belt from the pulley, or by shutting off the power at the tractor.

The plaintiff, a man fifty-two years old, had worked two years as a teamster upon the farm and was not familiar with machinery.    The defendant was well acquainted with machinery.    There was no dispute that he had been informed of the breaking of the clutch, and was ignorant whether it had been repaired, though he had ordered the repair.    There was evidence which, if believed, would have warranted the jury in finding that on the morning of the injury the plaintiff told the defendant that he did not wish to run the husker because it was dangerous; that he was assured by the defendant that it was safe, that he, the defendant, had run the machine and knew that it was all right and there was no danger, that all he " had to do was to put his foot on the brake and it would stop in a second; " and that the plaintiff went on, after a threat of discharge, because he did not wish to lose his job as teamster when winter was coming on.    The jury could have found that as the plaintiff was pushing stalks toward the rolls, they clogged, the machine jumped from the strain on the belt, and the plaintiff's hand was joggled toward the rolls which, owing to the broken clutch, could not be stopped in time to save the hand from being drawn between them.    The plaintiff testified that he had no occasion to use the pedal between the time he went to work on the husker,

about half past nine or ten o'clock, and the time his hand was caught, a few minutes before noon; and that he made no examination of the clutch.

In the course of the trial, the defendant duly excepted to the admission of testimony from the wife of the plaintiff, that at her home on the afternoon of the accident, the defendant, returning from seeing her husband at the hospital, told her that he was sorry he put her husband on the machine; " that he thought the machine was all right, but it wasn't"; and that " he would take care of him and look after him "; to the admission of testimony from her that the defendant, before leaving the house, said " not to have his hand taken off, and . . . he would be home in a couple of days "; and to the admission of the following testimony from a brother-in-law of the plaintiff: " Q. From your intimate knowledge and acquaintance of him, what would you say with reference, basing it upon your intimate knowledge and acquaintance of him, and his condition, your opinion would be as to his ability to work with any degree of profit or advantage on a farm? A. No."

The knowledge of the defendant in regard to the condition of the machine was material, and the testimony relating thereto was properly admitted. The rest of the testimony was inadmissible. The statements of the defendant as to his intended conduct toward the plaintiff, and his advice as to the amputation of the hand were both incompetent and inadmissible. We are satisfied that they were prejudicial; as the brief for the plaintiff and the oral argument addressed to us show that the first was used before the jury as a basis of argument of admitted liability, and the second as evidence of dictatorial and domineering conduct on the part of the defendant leading to a delay in amputation which resulted in the loss of the arm rather than of the hand. Both are illegitimate and harmful. The question to the plaintiff's brother-in-law did not ask a description of his work from which jurors could decide upon his capacity. The question asked, and obtained, the opinion of one not a physician or expert upon a matter of fact within the common

knowledge and experience of the jurors. Such opinion is not admissible.

The defendant requested that the jury be instructed as follows:

" The lack of an appliance used to stop the machine, or the failure to repair such appliance, does not make the defendant liable unless a reasonably prudent man in the same circumstances ought to anticipate and expect that such lack or failure would result in this, or a similar, accident.

" The plaintiff cannot recover unless he proves that the defendant did not act as a reasonably prudent man would have acted under the circumstances, and that the defendant should have reasonably expected that his failure to so act would probably result in this accident."

The defendant excepted to the denial of these requests. They were denied properly. The substance of the requests was dealt with in the charge sufficiently favorably to the defendant. The anticipation or expectation of a particular evil result from a course of action is not a necessary element of carelessness. If the conduct is such as the reasonably prudent and careful man would avoid, it is none the less careless because no one would anticipate or expect the happening which actually occurs. The instructions could not be given in the form requested, and the exceptions to the refusal to give them are overruled.

At the close of the evidence, the defendant moved that a verdict be directed for the .defendant on the ground that upon all the evidence the plaintiff was not entitled to recover. The judge denied the motion and submitted the case to the jury, which found for the plaintiff.

Whether the husking machine was reasonably safe and convenient in view of its construction, the degree of its stability, the broken condition of the clutch, the method of application of power, and the tendency to jump, if any, was for the jury. So, too, was the question, whether the defendant used the care of a reasonably prudent and careful man in allowing the plaintiff to work upon it without instruction, or with only such instruction as they might find, from the evidence, was given.

More difficult questions are presented whether, as matter of law, the plaintiff did not assume all the risks which actually attended operating the machine, and whether he did not himself contribute to his injury by his own carelessness. That he objected to being put at work on the husker, and went on only to avoid discharge, is not conclusive that he did not assume the risks. *Lamson* v. *American Axe & Tool Co.* 177 Mass. 144. No claim was made that he was not intelligent. The indisputable evidence shows that he must have known and appreciated that there was danger that his hand might be caught on the rolls. It was perfectly obvious: and only a week before he had escaped such injury solely by using the clutch to throw the rolls out of gear. The machine, its location and mode of operation were known to him. There was testimony which he did not deny that he was running the husker at the time the clutch was broken; but, if this was not believed, it is manifest that a slight examination would have shown that it had been broken and had not been repaired. There was nothing about the condition of the machine on the day of the accident which was not open to any one who examined it and clearly intelligible to one who had run it, though only once. No new danger was created if the cornstalks were wet and icy on the day of the injury instead of dry as on the day of the escape. In similar circumstances, it has been held that there was no negligence in failing to warn of danger and that the employee assumed the risks of operation. *Burke* v. *Davis*, 191 Mass. 20. *DeAngelo* v. *Boston Elevated Railway*, 209 Mass. 58. *Miller* v. *Mead-Morrison Manuf. Co.* 214 Mass. 75. In the case before us, however, there is evidence, the credibility of which is not for us, of an assurance from the employer who understood machines to the employee who might be found ignorant in regard to them, that there was no danger and that all was right. The law is clear that there is no assumption of risks unless the employee fully comprehends the defects and imperfections, and realizes the nature and extent of the danger. *O'Toole* v. *Pruyn*, 201 Mass. 126. In view of the occupation of the plaintiff and the general ignorance of machinery which the jury could attribute to him, it was a

question for the jury, whether, if he received the assurance from his employer to which he testified, he did appreciate the dangers attending the operation of the husker with its broken clutch, and so should be held to have assumed the risks. *Filosi* v. *Boston Woven Hose & Rubber Co.* 214 Mass. 408. The burden of proving that the risks were assumed rests upon the defendant, and rarely can the court rule that it has been sustained. *Griffin* v. *Joseph Ross Corp.* 204 Mass. 477. *Oswald* v. *Donohue*, 215 Mass. 574.

Whether the plaintiff by his own carelessness contributed to his injury was likewise for the jury. *Griffin* v. *Joseph Ross Corp.*, *supra.* The judge was right in instructing the jury that the broken clutch had no causal connection with the accident. Whatever impelled the plaintiff's hand toward the rollers, it was not the broken clutch. Yet the jury could find that relying upon the defendant's assurance in regard to the efficacy of the pedal to throw the clutch and stop the rolls, the plaintiff in the performance of his duty might properly place his hands closer to the rollers, or brace himself less strongly against a possible jump than he would have been justified in doing had he appreciated the real conditions; or in examining the machine, look less carefully for a possible unremedied defect.

Although close, the questions both on assumption of risk and contributory negligence of the plaintiff were for the jury. The exception to the refusal to direct a verdict for the defendant is overruled.

Because of the errors in the admission of evidence, the order must be

*Exceptions sustained.*