Argued June 2; affirmed June 22, 1943

## TROOK v. SAGERT ET AL.

(138 (2d) 900)

Before BAILEY, Chief Justice, and ROSSMAN, BRAND and HAY, Associate Justices.

*Frank D. Mayer,* of Lebanon, and *John H. Carson,* of Salem, (Carson & Carson, of Salem, on the brief), for appellant.

*Arthur K. McMahan,* of Albany (J. K. Weatherford, Jr., of Albany, on the brief) for respondent.

ROSSMAN, J. This is an appeal by the defendant (appellant) from a judgment of the circuit court in favor of the plaintiff (respondent) in the amount of $2,000. The judgment is based upon a verdict. The complaint averred that the defendant, on October 31, 1940, assaulted, beat and clawed the plaintiff. The answer is a general denial.

The appellant presents only one assignment of error. It challenges a ruling of the trial judge which overruled the defendant's objection to a question propounded to Mrs. D. C. Bellinger, a witness for the plaintiff. The appellant's brief says: "The testimony of Mrs. D. C. Bellinger was wholly irrelevant and should have been rejected by the Court." In support of that proposition, the appellant cites § 2-226, O. C. L. A., and 31 C. J. S., Evidence, § 212, p. 946.

The foregoing is the only contention the appellant makes.

The section of our code just mentioned says:

"Evidence shall correspond with the substance of the material allegations, and be relevant to the questions in dispute. Collateral questions * * *."

Corpus Juris Secumdum, at the aforementioned page, says:

> "A declaration is rejected as irrelevant where it has no bearing on the existence of any disputed fact, or where it is not sufficiently connected with the party so as to affect him. * * * Likewise a statement or declaration is inadmissible where it is not sufficiently connected with the party so as to affect him and thereby become relevant * * *."

The testimony given by Mrs. Bellinger, after the defendant's objection had been overruled, follows:

> "Just as I came out of the store, I was window shopping a little bit, and I saw him standing there and talking to a gentleman I didn't know. I recognized Mr. Sagert.
>
> "The Court: Tell what was said.
>
> "A. I heard him speak about the Plagmanns, and that is how I happened to notice him.
>
> "Mr. McMahan: Did he mention the Palmers?
>
> "A. Yes, and he said, 'I tried to scratch the God dam-son of a bitch's eyes out.'"

In her testimony Mrs. Bellinger mentioned neither time nor place.

All of the above testimony was subject to the defendant's objection: "Incompetent, irrelevant and immaterial."

The defendant contends that Mrs. Bellinger's testimony fails to indicate that the defendant's purported declaration referred to the plaintiff. Seemingly, if the record warrants a logical inference that the defendant, by the use of the profane words, meant the plaintiff, that is, if the plaintiff's name, George Trook, can be substituted for the vile epithet, then the objection was properly overruled.

After Mrs. Bellinger had given her testimony, the defendant was asked:

"Did you ever tell a man on the street in Lebanon in the presence of this lady who testified —in the presence of Mrs. Bellinger that you tried to scratch his eyes out?"

He answered:

"I never saw Mrs. Bellinger until she got on the witness stand—never in my life."

That was his sole reference to Mrs. Bellinger and to her testimony. It will be seen that the defendant did not answer the question propounded to him. In the question put to the defendant, the words "his eyes" clearly meant the plaintiff's eyes.

We shall now review some of the circumstances developed by the evidence for the purpose of determining whether an inference can logically be drawn that the vile epithet referred to the plaintiff.

Before Mrs. Bellinger testified, other witnesses had developed the facts which we shall now relate. In May of 1940 the defendant's wife was committed to the State Hospital and at a subsequent time Carroll Sagert, the son of the couple, was appointed guardian for his mother. Shortly prior to October 31, 1940, the defendant filed a petition requesting that he be appointed guardian.

October 31, 1940, the county court of Linn county held a hearing upon the defendant's petition, in the course of which the plaintiff gave testimony which displeased the defendant. The session of court adjourned in midafternoon and thereupon the plaintiff, in the company of Mr. and Mrs. C. A. Plagmann and Mr. and Mrs. S. A. Palmer, proceeded to leave the

courthouse by a broad flight of outside stairs which leads to the ground level. When the plaintiff was upon the staircase he heard the defendant, so he swore, approach him from the rear and declare: "Shorty, you dirty lying son of a bitch." The plaintiff testified that as the defendant uttered those words he (defendant) struck at the plaintiff, grabbed him, and the two fell. We now quote from the plaintiff's testimony:

"The next thing I remember he was on top of me, and he reached under me with his right hand and tried to reach for my eyes, and I kept throwing my head back against him, and he kept on reaching for my eyes and finally he couldn't reach my eyes and he gave three scratches right here with his fingernails.

"Q. Which cheek was it?

"A. The right cheek."

As we said, the plaintiff testified that he left the courthouse in the company of Mr. and Mrs. Palmer and Mr. and Mrs. Plagmann. That part of his testimony is unquestioned by the defendant. The defendant himself swore that the Palmers and the Plagmanns were near at hand when the fracas occurred. It will be recalled that Mrs. Bellinger testified that she heard the defendant mention the Palmers and the Plagmanns before he made his purported declaration about having tried "to scratch the God-dam son of a bitch's eyes out."

The plaintiff testified, as we have indicated, that the defendant "kept on reaching for my eyes and finally he couldn't reach my eyes and he gave three scratches right here with his fingernails." In response to more questioning, he swore that the scratches were on his right cheek about an inch below the eye. In fact, the plaintiff several times swore that the de-

fendant tried to get his fingers into the plaintiff's eyes.

Mr. Carl A. Plagmann aforementioned testified that while he was going down the outside steps of the courthouse the defendant greeted the plaintiff with the profane language which the plaintiff, as a witness, had repeated. He also described the scuffle that took place between the plaintiff and defendant. We now quote from his testimony:

"Mr. Sagert was working at Trook's eye * * * it was apparent that he was trying to get his fingers in his eye."

At another part of his testimony Plagmann, referring to the defendant's efforts to reach the plaintiff's eyes, said:

"I know one hand was working toward his eye."

Plagmann, upon seeing the situation, tried to separate the two men as they rolled about upon the stairs. Finally, he succeeded in separating them, and at that point, according to his testimony, "I noticed there was some scratches on Mr. Trook's eye."

The aforementioned Mrs. Palmer testified that as the group of five (the Palmers, Plagmanns and the plaintiff) were descending the stairs together, the defendant applied to the plaintiff the profane appellation which the other witnesses had repeated. After testifying that Plagmann separated the two men from their encounter, she said that the plaintiff's "face was scratched. * * * Blood was on his face from scratches."

The defendant, as a witness, conceded that the Palmers, the Plagmanns and the plaintiff left the courthouse ahead of him and then swore that he ad-

dressed the plaintiff thus: "Shorty, you are the God-damnedest liar I ever heard in my life on the witness stand." He claimed that the plaintiff was the aggressor and that he (defendant) was knocked to the steps. His counsel then asked him:

"The plaintiff, Mr. Trook, said his face was scratched, was it?"

He answered:

"He might have got that scratch on the concrete. I don't know how he got that."

Mary Larson, a witness for the defendant, referring to the plaintiff, testified:

"I believe he had a scratch on his cheek someplace; it was on his right cheek, I think."

Mrs. Bellinger's entire testimony was brief. She said that she was not personally acquainted with the plaintiff and that she knew the defendant "just by sight." As we have already indicated, she swore that she was "window shopping" when her attention was attracted to the defendant and to 'a "gentleman I didn't know" by "a remark about the Plagmanns and Palmers" which the defendant at that time made. The only remaining part of her testimony is that which is quoted in a preceding paragraph. In giving her testimony, Mrs. Bellinger did not disclose when and where she encountered the defendant. She had not seen the encounter.

The above, we believe, is a sufficient review of that part of the evidence which shows whether or not the declaration which Mrs. Bellinger says she heard pertained to the plaintiff.

We now revert to the challenged testimony and to the objection which the defendant made to it in the trial court. The objection was: "Incompetent, ir-

relevant and immaterial.'' Before a ruling was made, the trial judge said: ''I don't see the materiality of it. Before the witness makes a statement, I think we better adjourn to chambers and find out whether this is admissible or not.'' Upon returning to the courtroom the objection was overruled. Then the witness gave the answer to the question which we have already quoted. This was followed by a motion made by defendant's counsel to strike ''on the ground that it is irrelevant, immaterial and incompetent and has nothing to do with the issues of the case, and is of no help to the jury in helping them solve the issues, and does not refer, as related, to any individual involved in this litigation.'' The motion having been made, the trial judge declared: ''I will reserve the ruling on that, and pass on that later on.'' When the plaintiff rested and the defendant had moved for a nonsuit, the trial judge, in denying that motion also denied the motion to strike. Thus, it is apparent that the issue as to whether or not the declaration was material received careful attention in the court below.

Obviously, the trial judge would not have made the challenged rulings unless he believed that the defendant's purported words, ''I tried to scratch the God-dam son of a bitch's eyes out'' referred to the plaintiff's eyes. The question before us, therefore, is whether the record is capable of supporting a logical conclusion that the defendant's profane words meant the plaintiff.

The challenged ruling did not vouch for the credibility of Mrs. Bellinger's testimony, nor did it require the jury to find that the profane words referred to the plaintiff and his eyes. It merely opened the portals which permitted the testimony to reach the

jury. If the jury did not believe Mrs. Bellinger or thought that the declaration which she said she heard did not refer to the plaintiff, then they were at liberty to ignore her testimony.

There are many exclusionary rules of evidence, but the fundamental rule which makes provision for the reception of evidence is that all relevant facts are admissible; that is, they are admissible provided they violate none of the exclusionary rules. If a witness knows something which under the common rules of logic will advance the search for the truth, it is relevant. Therefore, if the purported declaration was made after the fracas, and if it meant that the defendant tried to scratch out the plaintiff's eyes, it was relevant. In that event it was an admission against interest.

It will be noticed that the profane epithet in the declaration is substantially similar to the vile language with which the defendant concedes that he greeted the plaintiff upon the staircase immediately before the encounter took place. The fact that the greeting for which the defendant acknowledged responsibility was couched in language similar to another which he seeks to disclaim is a circumstance worthy of attention.

It will also be noticed that just before the defendant made the purported declaration he mentioned, so Mrs. Bellinger swore, the names of the Palmers and the Plagmanns. All four of those persons were present on the courthouse steps when the encounter took place. The fact that the defendant associated in his mind the names of those four persons with his thought of having "tried to scratch the God-dam son of a bitch's eyes out" is a circumstance that has at least some tendency

to indicate that he was thinking of the plaintiff when he employed the profane words.

Next, it will be observed that the declaration spoke of efforts to scratch eyes. The willful scratching of eyes is by no means a common occurrence. Three or four witnesses swore that they saw the defendant try to scratch the plaintiff's eyes October 31, 1940, and after the encounter at least one of the defendant's witnesses saw scratches near the plaintiff's right eye. Surely the defendant, in addition to having sought to scratch out the plaintiff's eyes, was not talking upon the public streets, in the presence of Mrs. Bellinger, about efforts to scratch out some one else's eyes.

It is true that Mrs. Bellinger did not state the time when she overheard the defendant make his statement. Since the defendant, who was 66 years old, took great pains to make it clear that he had been afflicted with very bad health for many months or even a year before the incident of October 31, 1940, the declaration which Mrs. Bellinger overheard must have been made at a time when the defendant was up and around. Concerning his health, the defendant swore: "I had an internal hemorrhage and lost all my blood and I fainted and everything like that." He explained that he had had a hemorrhage about a year before October 31, 1940, and another in April of 1940. Continuing, the defendant said: "It took a long time to build that blood up; I had to start from nothing." He claimed that his illness confined him to his bed and that he was still under a physician's care in October of 1940. It seems evident that the declaration about the scratching of eyes could not have been made any earlier than October of 1940.

■ From the foregoing we observe that there are three details which identify the plaintiff as the one

to whom the defendant must have referred in his purported declaration: (1) The profane words which form a part of the declaration were also employed by the defendant when he spoke to the plaintiff immediately before the encounter; (2) just before the defendant made the declaration in Mrs. Bellinger's presence he mentioned the names of the Palmers and the Plagmanns; they were the four persons in the plaintiff's company when he descended the courthouse steps to the spot where the trouble occurred; and (3) the declaration mentioned the defendant's efforts to scratch eyes; in his encounter with the plaintiff the defendant sought to scratch out the plaintiff's eyes. The combination of those circumstances is significant.

■■ The rules of evidence do not undertake to define the logical connection which must exist between a *factum probans* and the *factum probandum*. That relationship is left to the ordinary rules of logic. Any fact which has a rational probative value is commonly deemed relevant, and therefore admissible. If it throws some light upon the issue, the logical connection is universally conceded. If a rational relationship does not exist between the item of evidence offered and the fact which a party must prove, it would be a waste of time to let the witness testify. It appears to us that, in view of the fact that there were circumstances which tended to indicate that the defendant's declaration concerned the plaintiff, and especially in view of the fact that the trial judge, who was familiar with the atmosphere of the trial, overruled the objection, the single assignment of error presented by the defendant discloses no merit.

The judgment of the circuit court is affirmed.