Argued November 28, 1956, affirmed October 16, petition for
rehearing denied November 13, 1957

# PHILLIPS, Guardian *v.* CREIGHTON,
## Administrator
### 316 P. 2d 302

*Allan G. Carson,* Salem, argued the cause for appellant. With him on the brief were John A. Heltzel and Peter M. Gunnar, Salem.

*Asa L. Lewelling,* Salem, argued the cause and filed a brief for respondent.

Before WARNER*, Chief Justice, and ROSSMAN, PERRY** and McALLISTER, Justices.

## McALLISTER, J.

This is an action by the plaintiff, R. L. Phillips as guardian of his infant son, James Phillips, against T. M. Gosser to recover damages for personal injuries sustained by said minor when he was struck by an automobile owned and driven by Mr. Gosser. After the action was filed, Mr. Gosser died, and Chas. W. Creighton, Jr. was appointed administrator of his estate and substituted as the defendant. When the case was first tried the jury was unable to agree and was discharged. The second trial resulted in a verdict in favor of the defendant and from the judgment based thereon the plaintiff appeals.

The plaintiff's brief contains nine assignments of error, six of which involve the giving or refusal to give certain instructions to the jury. Two assignments of error are based on the exclusion of testimony by the court and the other concerns the action of the court in permitting the widow of T. M. Gosser, who at the time of the trial had remarried, to sit at the counsel table during the trial with the attorney for the defendant.

---

* Chief Justice when case argued.
** Chief Justice when case decided.

The accident occurred on. September 19, 1950, at about 5:12 o'clock p.m. in a rural area about three miles east of Salem on the Geer road which at that place runs east and west. Gosser was traveling westward and the road proceeding in that direction runs downhill into and across a small valley and then up the west slope of the valley at a grade estimated from 20 to 25 percent. There are fields on both sides of the road through the valley with a small orchard along the south side at the scene of the accident. The Phillips home is situated at the south side of the road near the top of the hill on the west side of the valley.

The evidence indicates that immediately prior to the accident, James Phillips, who was then just three years old, and his brother Roger, who was four years old, were playing in a patch of weeds on the south side of the road about 150 feet east of the Phillips driveway. The weeds were about 33 inches tall and according to their father, James was 39 inches and Roger 42 inches tall. Trails had been trampled in the weeds and after the accident a little red wagon with which the boys had been playing was found in the weed patch.

After the accident Gosser told an officer of the Oregon State Police who was investigating the accident that the two boys ran onto the road from the weed patch and ran across toward the north side of the road; that he did not see the boys until they ran out of the weeds; that Roger stopped at the center line of the highway but that James continued and was struck by the car. The left headlight of the car was shattered and there was a dent immediately under that headlight. James received very severe permanent injuries.

According to the state police, the skidmarks leading to the Gosser car started north of but close to the center line of the highway and angled toward the north

edge of the pavement. The longest skidmark extended for 62 feet. The plaintiff testified that the southerly skidmark started slightly south of the center line. The car was stopped on the north shoulder about 20 feet beyond the west end of the skidmarks. The accident occurred on a clear, sunny day and witnesses testified that after the accident Gosser said in effect that he "was facing the sun" or "that the sun was in his eyes."

■■ Prior to the trial the attorney for the defendant asked the court for permission to have the widow of T. M. Gosser, who had remarried and was then Mrs. Daisy Loveland, sit at the counsel table with him during the trial. The request was granted over the objection of the plaintiff. It appears that the defendant, Chas. W. Creighton, Jr., is a Salem attorney who was appointed administrator of the estate of T. M. Gosser upon the petition of the plaintiff so that the action might be continued and had no other interest in the case. Plaintiff contended that Mrs. Loveland had no financial interest in the outcome of the case and that "it would put an improper color on the case to have her sitting there as a defendant when she is actually not a defendant." Nothing further was offered to show how the plaintiff would be prejudiced by the presence of Mrs. Loveland at the counsel table. The manner of conducting a trial rests in the sound discretion of the trial court and we can not say that there was any abuse of that discretion in this case. *Cholia v. Kelty,* 155 Or 287, 63 P2d 895, *Best v. Tavenner,* 189 Or 46, 218 P2d 471, and *Denton v. Arnstein,* 197 Or 28, 250 P2d 407.

■ Plaintiff called as a witness James G. Lauderback who testified that during the afternoon of the accident he was plowing in a field about three quarters of a mile south and east across the draw from the Phillips home. Plaintiff offered to prove by this witness that

while he was plowing he saw a car traveling west on the Geer road as it went down the hill and across the valley until it started up the hill on the other side; that right away he heard tires "howling on the pavement like somebody was trying to stop" but did not hear any impact; that he thought the car was traveling "plenty fast * * * 50 miles an hour easy." The witness did not fix the time except to say that it was "along in the evening, I don't know what time." The ruling of the court in sustaining defendant's objection to this testimony is assigned as error.

Lauderback did not describe the car observed by him nor was any other evidence offered to prove that the car seen by Lauderback was the Gosser car. The time at which Lauderback saw the car was not fixed with any certainty and might have been before or after the accident. It might be inferred that the car Lauderback saw left skidmarks but there is no direct evidence of that fact. Nor is there any evidence that there were no other skidmarks on the highway that evening except those leading to the Gosser car. In the absence of any evidence to identify the car seen by Lauderback as the Gosser car, we think the trial court did not err in excluding this evidence.

Plaintiff also assigns as error the exclusion of the testimony of plaintiff that sometime after the accident Mr. Gosser made the following statement to Mr. Phillips:

> "He told me that we had nothing to worry about, that everything would be taken care of."

■ The rule adopted by this court governing the admissibility of statements such as that made by Mr. Gosser is stated in *Briggs v. John Yeon Co.,* 168 Or 239, 254, 122 P2d 444:

> "* * * The correct rule in that regard which

seems, however, not to have been recognized in our decision in McAllister v. Farra, 117 Or. 278, 284, 243 P. 785, is, as stated by Circuit Judge Soper in Arnold v. Owens, 78 Fed. (2d) 495, 'that a voluntary offer of assistance made upon an impulse of benevolence or sympathy may not be considered an admission of culpable causation (citing authorities). If, however, the surrounding circumstances indicate, not merely an act of benevolence, but some admission of fault on the part of the defendant, the evidence may be admissible.' See: Watt v. Associated Oil Co., 123 Or. 50, 260 P. 1012; Bernasconi v. Bassi, 261 Mass. 26, 28, 158 N. E. 341; Grogan v. Dooley, 211 N. Y. 30, 105 N. E. 135; Sias v. Consolidated Lighting Co., 73 Vt. 35, 40, 50 Atl. 554; Patrick V. Bryan, 202 N. C. 62, 162 S. E. 207; Norman v. Porter, 197 N. C. 222, 148 S. E. 41; Binewicz v. Haglin, 103 Minn. 297, 115 N. W. 271, 15 L. R. A. (N.S.) 1096, 14 Ann. Cas. 225; Wilson v. Daniels, 250 Mass. 359, 364, 145 N. E. 469."

The above rule was followed in *Dunning v. Northwestern Electric Co.*, 186 Or 379, 199 P2d 648, 206 P2d 1177, which expressly overruled *McAllister v. Farra,* supra.

■ We believe the statement made by Mr. Gosser does not in itself constitute an admission of fault and in the absence of circumstances indicating that the statement could be so construed, the testimony was properly excluded. We have reviewed the authorities cited in plaintiff's brief which include *Brown v. Wood,* 201 NC 309, 160 SE 281, and insofar as they are in conflict with the rule adopted by this court, we decline to follow them.

■ The plaintiff assigns as error the failure of the court to give the following requested instruction:

"It is the duty of a person driving a motor vehicle on and along a public highway to keep a reasonably constant and continuous lookout.

"This is a continuing duty, and the obligation is upon one so driving a motor vehicle on a public highway continually to be on the lookout for others moving onto or on and along or across the roadway.

"This means not only to look, but also to see and observe that which an ordinarily prudent person in the position of the driver could see and observe.

"I instruct you that if you find from a preponderance of the evidence that Mr. Gosser failed to keep a reasonably constant and continuous lookout as he drove on and along the highway, you must find that he was guilty of negligence."

In his complaint the plaintiff alleged that Gosser was negligent in driving without any lookout. The court called the attention of the jury to this and the other specific charges of negligence but did not further define or explain Gosser's duty to maintain a lookout. If a proper instruction on this subject had been requested it should have been given.

This court has consistently held that an operator of a motor vehicle must maintain such a lookout as a reasonably prudent person would maintain in the same or similar circumstances. See *Walker v. Penner,* 190 Or 542, 227 P2d 316 and *Senger v. Vanc.-Portland Bus Co.,* 63 Adv Sh 483, 304 P2d 448.

The instruction requested by plaintiff makes no reference to the circumstances existing at the time and place of this accident. In addition, the second paragraph of the instruction would impose a duty on a motorist driving in a rural area to continuously look for persons moving onto or across the highway. A motorist is required to keep a reasonably continuous lookout but is not required to continuously look for danger from a particular area unless under similar circumstances such a lookout would be maintained by

a reasonably prudent person. The duty resting on Mr. Gosser in this case was to keep such a lookout as a reasonably prudent person would have maintained in the same or similar circumstances. The requested instruction would have imposed a higher duty on Mr. Gosser and the failure to give the instruction was not error. The rule applicable was restated in *Valdin v. Holteen and Nordstrom,* 199 Or 134, 161, 260 P2d 504, as follows:

> " '* * * Failure of a trial court to instruct the jury upon the law applicable to a party's theory of the case may be assigned as error on appeal only if predicated upon the court's refusal to give a requested instruction which clearly, concisely, and accurately stated the law in question.' "

Plaintiff assigns as error the failure of the court to give the following requested instruction:

> "The public highways are open for all, children as well as adults. Children have equal and reciprocal rights with motorists to the use thereof."

Although the above instruction might be true as an academic proposition of law, we doubt that it would be a proper instruction in any case. If a child is old enough to be accountable for his conduct his right to the immediate use of the highway would not at all times be equal and reciprocal with that of a motorist. If the child were crossing the roadway at a crosswalk he would have the right-of-way. If the child were crossing the roadway at any other place, the motorist would have the right-of-way. In a proper case the jury would be instructed concerning the rights and duties of the pedestrian and motorist depending upon the circumstances of the particular case.

Because James was only three years old, he was under no duty whatsoever to exercise care and the

court so instructed the jury. Whether he was rightfully on the road or not could make no difference in this case. Under these circumstances the requested instruction was unnecessary and in the absence of any explanation of what is meant by equal and reciprocal rights would tend to confuse the jury. The court did not err in refusing to give the requested instruction. See *Archer v. Gage et al.*, 126 Or 532, 556, 270 P 521.

We have considered the other objections made by the plaintiff to the instructions but have found nothing prejudicial to the plaintiff. This case was well tried and the issues were simple and readily understandable by the jury. The case turned on whether Mr. Gosser should have seen James in time and been able to avoid hitting him. The case was fairly submitted to the jury and in the absence of any error, the judgment is affirmed.

ROSSMAN, J., dissenting.

I dissent, and, since the defeat of the plaintiff's action has tragic consequences for the crippled, innocent victim of the accident which happened September 19, 1950, upon the country road mentioned in the majority opinion, I feel impelled to state my reasons. The record convinces me that the testimony of James G. Lauderback concerning speed was admissible. His testimony, as I shall presently show, establishes that the car which he saw was Gosser's. Next, I am satisfied that error was committed when the instruction upon the subject of lookout, which the plaintiff requested, was not given. Notwithstanding the fact that Gosser was driving with the setting sun in his eyes, the trial judge gave no instruction whatever upon the subject of lookout; in fact, he did not even tell the jury that a motorist must maintain a lookout; he ignored the subject.

I point out that no witness whose testimony was

received saw the Gosser car in motion and, accordingly, no evidence concerning its speed was given by anyone who saw it in operation. However, Gosser's widow, as a witness for the defendant, was permitted to testify that a few hours after the accident Gosser told her that he "was going less than forty." That self-serving statement was submitted to the jury as evidence of the car's speed. As I have said, no effort was made by the instructions to indicate to the jury that a motorist must be on the watch for things ahead. Evidence as to speed and an instruction upon the duty to maintain a lookout were vital to a just determination of this case, as I shall presently show.

James G. Lauderback, above mentioned, was plowing his field when he saw a car going by at a rate of speed which attracted his attention. The car was about three-fourths of a mile away, but the lay of the land was such that Lauderback had a good view. The majority state that the casualty occurred in a small valley. Possibly the word gully would better describe the little declivity in the surrounding land. The distance from one end of the gully to the other was only 1,000 feet. The car, after traveling westerly for a while over the tableland, entered the gully, or miniature valley, by going down the decline. Like the road on the tableland over which it had just passed, the road down the decline was virtually straight. The distance down the decline was possibly 500 feet. Having covered that distance, Gosser entered upon the incline which would take him to the tableland west of the gully. The incline, like the decline, was about 500 to 600 feet long. Until it reached the incline, the car which Lauderback saw was constantly in view, but shortly after it began to ascent the incline an orchard hid it from his view. It was out of his view for about 150 feet when he heard its tires "howl." The

Phillips home is about 250 feet from the bottom of the gully. A moment or two after the car which Lauderback saw had disappeared from view he heard "the tires howling on the pavement like somebody was trying to stop." He swore that the sound came "right toward Phillip's" home.

The question before us is: does the evidence sufficiently indicate that the car which Lauderback saw was Gosser's so that Lauderback's testimony should have been received. Let us remind ourselves that a litigant need not establish certitude or prove a contention so convincingly that all will say is it indubitably true. If the law demanded infallibility, none could meet its demands. It is satisfied with probabilities and reasonable certainty.

The car which Lauderback saw was upon Geer road, being the same thoroughfare upon which Gosser was driving when he struck the little child, James Phillips, in whose behalf this action was brought. Gosser was driving west at the time of the casualty and that was the direction in which the car was moving which Lauderback saw. Gosser applied his brakes when he was in front of the Phillips property and thereby made such a loud sound that the little boy's mother heard it in her kitchen and rushed outdoors. The car which Lauderback saw made a sound when it reached the Phillips property which Lauderback described in this way: "The tires howling on the pavement like somebody was trying to stop."

I shall now mention another fact which bears upon the subject matter of inquiry: Was the car which Lauderback saw Gosser's? The majority, referring to the skidmarks which the Gosser car left upon the pavement in front of the Phillips property, say:

"* * * Nor is there any evidence that there

were no other skidmarks on the highway that evening except those leading to the Gosser car."

Russell L. Haynes and James A. Finney, officers of the Oregon State Police, reached the scene of the accident a few moments after the casualty and made a careful investigation. They took note of the skidmarks upon the pavement, the shoulders of the roadway, the adjacent weed patches, the glass upon the pavement, the damage to the Gosser car, the direction of the road and the distances from the scene of the impact to such objects as power poles, the driveway and the Phillips home. In order to achieve accuracy, the two officers used a measuring tape. Finally, Haynes drew two sketches of the scene. One, which he entitled "Profile," represents a cross section of the gully. It is a portrayal of the decline and the incline from the point of view of one who is standing to one side. It has the appearance of a crescent. The other sketch, being the larger of the two, shows the road, the weeds, the skidmarks, etc. The skidmarks and the distance from them to various objects is the principal subject matter of this sketch. In view of the fact that the majority suggest that the pavement in front of the Phillips property may have shown more than one set of skidmarks, it is pertinent to take note of the fact that Haynes' carefully prepared sketch shows only one set of skidmarks. The officers testified that they carefully examined the road before the drawing was made, and it is apparent from this testimony that they took note of its characteristics for a considerable distance. The set of skidmarks shown on Haynes' sketch lead directly to the Gosser car, and no one questions but that set was made by the Gosser vehicle. One of the two marks was 62 feet long and the other 44 feet.

The third day after the misfortune had taken place,

William R. Carter and his wife visited the scene of the mishap and, while walking along the road, took a series of photographs showing the entire length of the roadway through the little valley. Some of their pictures overlap others. The photographs, 16 in number, are eight by ten inches in size. In all instances the photographs were so taken that they show the pavement clearly. The eye has no trouble whatever in picking up in the photographs the yellow line, pavement patches, oil and other blemishes. The first of these pictures began at the easterly point where the road dips down into the miniature valley, and the last was taken where the roadway has ascended the westerly incline. As these photographs advance along the westerly incline near the Phillips property, they show the skidmarks which were made by the Gosser car. A careful perusal of the photographs fails to show any other skidmarks whatever. While the photographs were being introduced in evidence and the Carters were giving their testimony, no claim was made by the defendant that the photographs showed any skidmarks other than those made by the Gosser car or that they omitted something which should have been shown. In fact, throughout the trial the defendant never made an intimation that any skidmarks other than Gosser's were upon the pavement.

The boy's father testified at length concerning the roadway through the miniature valley, the skidmarks and other items of interest. In so doing he gave no indication that in that area of about 1,000 feet he had found any skidmarks except those which the Gosser car had made.

From the foregoing the jury would surely have been justified in believing that immediately following the casualty there was only one set of skidmarks upon the

pavement in the little valley and that it was made by the Gosser car.

A previous paragraph of this opinion mentions the fact that the boy's mother, while in her kitchen, heard the screeching sound made by skidding tires and upon rushing to the road discovered that one of her children had been run down. She mentioned only one screech of that kind and, accordingly, it may be permissible to infer that only one car made an abrupt stop upon the Geer road near the Phillips property. Lauderback, too, heard only one sound made by skidding tires. After he had described the noise, the following occurred:

"Q Well, did you hear anything more at that time?

"A No."

Further examination of Lauderback developed the fact that the speeding car which he had described was the only one which he saw at that time. The boy's mother was not asked a question similar to the one put to Lauderback about hearing other noises, but she left her home immediately with the injured boy for a hospital. Gosser, however, remained upon the Phillips property for a considerable period and could have seen and heard any car which skidded its tires in that vicinity. No one claims that he saw or heard an incident of that kind.

The above being the facts, it is clear that the record shows that the part of Geer road which is material to this case contained only one set of skidmarks.

The above shows that

(A) Gosser was (1) driving westerly on Geer road September 19, 1950, in the late afternoon; (2) Gosser's course on Geer road took him in front of the Phillips property; (3) when Gosser reached a point in front of

the Phillips property he applied his brakes and thereby made a loud sound; (4) the application of Gosser's brakes made a set of skidmarks upon the pavement in front of the Phillips property which could be plainly seen for several days thereafter; (5) only one screeching sound was heard at about the time when Gosser skidded his tires.

(B) The car which Lauderback saw was (1) driving westerly on Geer road September 19, 1950, in the late afternoon; (2) the course of the car which Lauderback saw took it in front of the Phillips property; (3) when the car which Lauderback saw reached a point in front of the Phillips property it made a sound which that witness described as "the tires howling on the pavement like somebody was trying to stop;" (4) no other sound made by skidding tires was heard at about that time; (5) only one set of skidmarks was found upon the pavement in the vicinity of the Phillips property.

The question now is: are the facts which we have denoted with the letter B relevant to establish that the car there described is the same car which is the subject of paragraph A.

Wigmore on Evidence, § 32, gives us the following test of relevancy:

"* * * Does the evidentiary fact point to the desired conclusion (not as the only rational hypothesis, but) as the hypothesis (or explanation) more plausible or more natural out of the various ones that are conceivable? Or (to state the requirement more weakly), *is the desired conclusion* (not, the most natural, but) *a natural or plausible one among the various conceivable ones.*"

McCormick on Evidence, p. 318, § 152, proffers the following test of relevancy:

"* * * It is believed that a more modest standard would better reflect the actual practice of the

courts, and that the most acceptable test of relevancy is the question, does the evidence offered render the desired inference *more probable than it would be without the evidence?*"

McCormick shortly resumes in this vein:

"Relevant evidence, then, is evidence that in some degree advances the inquiry, and thus has probative value, and is prima facie admissible."

From *Klingback v. Mendiola,* 138 Or 234, 6 P2d 237, the following is taken:

"The defendant assigns error in the admission by the court of the testimony of plaintiff that the defendant cut and harvested the hay and hauled it to his own ranch across the river. This testimony was competent as a circumstance bearing upon the contract between the plaintiff and defendant. Any evidence which tends to render the fact probable or improbable is relevant: * * *.*"

*Carruthers v. Phillips,* 169 Or 636, 131 P2d 193, declares:

"* * * Plaintiff was entitled to show that the defendant had opportunity to do the act charged. This she did show. She was entitled to go further and show that the defendant was the only one who could have done the act charged. This, too, she supported by her testimony. * * * When the doing of an act by the defendant is charged, evidence is admissible to show that the defendant had opportunity to do it, even though his opportunity be not shown to be exclusive, * * *.*"

In *Trook v. Sagert,* 171 Or 680, 138 P2d 900, we pointed out that if a witness knows something, which, under the common rules of logic, will advance the search for the truth, it is admissible.

The testimony which we have reviewed shows that only one screech made by skidding tires was heard,

and that only one set of skidmarks could be found upon the pavement. It is conceded that Gosser's car skidded when it was in front of the Phillips property and that it made skidmarks upon the pavement at that place. In short, it is conceded that the skidmarks which the witnesses described were made by the Gosser car. Accordingly, in order to dispose of the car which Lauderback saw, we must take one of the three following courses: (1) it was a myth; (2) although Lauderback heard "the tires howling on the pavement like somebody was trying to stop," actually the car left no skidmarks on the pavement; or (3) the car which Lauderback saw was Gosser's and the loud noise which he heard came from that car, and the skidmarks above described were made by it.

No court would have a right to reject Lauderback's testimony as a myth. A court can take judicial notice of the fact that when a speeding car abruptly applies its brakes upon a hard-surfaced pavement it makes a loud noise of the character described by Lauderback, and its tires leave skidmarks.

The problem which the trial judge faced when Lauderback's testimony was tendered was not to resolve with finality for the court whether the car which Lauderback saw was, in fact, Gosser's; the tender required the trial judge to go no further than to determine whether Lauderback's testimony was relevant and whether it possessed sufficient merit to warrant its submission to the jury. Similar problems frequently occur in criminal cases when the state tenders proof of a conspiracy, dying declaration or a confession. The judge in such instances goes no further, if he rules for the state, than to hold that prima facie the dying declaration or the confession, as the case may be, is admissible. In his instructions to the jury, he submits

to that body the ultimate problem of determining whether or not the contested evidence should be accepted as the truth.

In the present instance, the ruling by the majority pertains, not only to a preliminary matter affecting admissibility, but it excludes from the jury's consideration an item of evidence which went to the heart of the case and which was one of the most important the plaintiff possessed. The following is taken from McCormick on Evidence, p 124:

"* * * These are the cases in which it happens that the preliminary fact-question on which competency of evidence or witness depends is also one of the ultimate disputed fact-issues which the jury would normally decide. Examples are the cases of prosecution for bigamy where the first marriage is disputed, the second wife is offered as a state's witness, and the defendant objects under the statute disqualifying the wife to testify against her husband. Another example is the situation where the plaintiff sues on a lost writing; the defendant contends that it was not lost because it was never in existence. When the plaintiff offers as secondary evidence a copy of the alleged writing, logically it seems that to decide the preliminary question of loss, the judge would have to decide the ultimate issue of whether there was an original. Some of the decisions even in these cases of coincidence with an ultimate issue, steadfastly adhere to the traditional view that the judge decides finally the preliminary fact. Others have adopted what is probably a more acceptable accommodation of powers of judge and jury. In these cases of coincidence they direct the judge if he finds that the offering party has given evidence on the preliminary question from which a jury could reasonably find in his favor, to admit the offered evidence or witness."

Without resort to further analysis, I express my belief that Lauderback's testimony was admissible

(*State v. Moore,* 32 Or 65, 48 P 468) and that error was committed when the defendant's objection to it was sustained.

I also believe that the error thus committed was material. Lauderback's testimony, if received, would have indicated that Gosser was driving "plenty fast * * * fifty miles an hour easily" upon a pavement which was rather narrow and when "the sun was in my eyes." The words in quotation were used by Gosser in explaining to more than one person the condition he faced as he drove along the road. The sun was about to set and was slightly to the left of the roadway. The error was doubly material in view of the fact that Lauderback's evidence was the only eye witness testimony that the plaintiff had on the subject of speed.

It is my conviction that material reversible error was committed when the trial judge failed to give to the jury the instruction defining a motorist's duty to maintain a lookout, which the plaintiff requested. The requested instruction is quoted in the majority opinion. It appears permissible to infer that the trial judge knew of no infirmity in the instruction and had intended to give it, for, at the close of the instructions, counsel for the plaintiff addressed this inquiry to the trial judge:

"Was Plaintiff's requested instruction Number 1 overlooked on the matter of lookout?"

and received this reply:

"I think I gave it, but you have an exception if I did not."

The instructions used the term "lookout" only once. The following is the sole instance:

"Now, in the complaint, Plaintiff alleges that Defendant was negligent in some four specified

particulars. He first alleges that the Defendant drove and operated the Chevrolet car without a lookout; * * *. Each of these specifications are denied."

Neither the word "lookout" nor any equivalent of it was ever again used in the instructions.

In holding that the requested instruction was not a correct statement of the law, the majority say:

"The instruction requested by plaintiff makes no reference to the circumstances existing at the time and place of this accident. In addition, the second paragraph of the instruction would impose a duty on a motorist driving in a rural area to continuously look for persons moving onto or across the highway."

Unless a motorist intends to look "continuously" for other travelers on the roadway, even though the thoroughfare is a rural one, he should pull to the side of the roadway and stop. No driver of a motor vehicle who does not purpose to look can be tolerated upon the road.

The paragraph which I quoted from the majority opinion says:

"The instruction requested by plaintiff makes no reference to the circumstances existing at the time and place of this accident."

The instructions actually given to the jury stated:

"Negligence is the doing of some act which a reasonably careful, considerate and prudent person would not have done under like circumstances and conditions, or the failure to do that which a reasonably careful, considerate and prudent person would have done under like circumstances and conditions, having in mind the danger to be reasonably apprehended. The standard of care is always the conduct of an ordinarily prudent person who exercises care

commensurate with the dangers to be avoided and the likelihood of injury to others."

In view of the fact that that instruction was actually imparted to the jury, the precautionary admonitions upon the subject of attendant circumstances, which the majority mention, were given and did not need repetition in the requested instruction. However, the admonitions which qualify duties in terms of reasonableness were incorporated within the requested instructions, as we see from the following taken from the requested instruction: "to keep a reasonably constant and continuous lookout", and, finally,

"If you find from a preponderance of the evidence that Mr. Gosser failed to keep a reasonably constant and continuous lookout as he drove on and along the highway, you must find that he was guilty of negligence."

The second part of the requested instruction which says, "This is a continuous duty" merely called attention to the fact that the duty to keep awake and be on the alert is continuous. All duties, such as to use reasonable care, are continuous, and that fact is often stated to the jury in instructions.

I am aware of no infirmity in the requested instruction. Let us bear in mind that when instructions are given to the triers of the facts, the juror catches his law on the fly, and not by the process of slow, labored, critical perusal of the paper upon which the judge wrote his material. When read aloud, the requested instruction is easy of understanding.

It was doubly important in this case that the jury should have instructions upon the subject of lookout. Gosser drove down a narrow roadway, to the sides of which at places there were encroaching bushes and trees, which interfered with view and demanded care.

He freely conceded to those who spoke to him later that the sun was in his eyes. The little child was hurled six feet into the air, so Gosser stated, and 30 feet ahead.

The judgment of the circuit court should be reversed.

I dissent.