Argued January 31; affirmed May 9, 1950

# BEST *v.* TAVENNER

218 P. (2d) 471

*Bruce Spaulding,* of Salem, argued the cause and filed a brief for appellant.

*Allan G. Carson,* of Salem, and *Philip Hayter,* of Dallas, argued the cause for respondent. With them on the brief was Wallace P. Carson, of Salem.

Before Lusk, Chief Justice, and Brand, Belt, Rossman and Bailey, Justices.

ROSSMAN, J.

This is an appeal by the defendant from a judgment of the Circuit Court in favor of the plaintiff, which was entered in an action instituted by her to recover damages for personal injury and property hurt suffered in a collision between the plaintiff's automobile and one driven by the defendant. The amount of the attacked judgment is $5,500, plus costs. The judgment was based upon a verdict.

The appellant (defendant) presents two assignments of error. The first is:

"The Court erred in striking the testimony of Dr. Gussie A. Niles from the record and in instructing the jury as follows:

" 'The Court upon its own motion is striking the testimony of Dr. Gussie Niles from the record and you folks on the jury are instructed to absolutely disregard any testimony which Dr. Niles yesterday gave and in your consideration of this case as Jurors, when you finally retire to the jury room, you must in no way consider any of the testimony which Dr. Niles gave yesterday. That is entirely out of the record, and you will entirely and completely disregard it in your deliberations."

The second assignment of error reads as follows:

"The Court erred in calling upon defendant, in the presence of the jury, to waive the right of cross-examination of Dr. Niles."

Dr. Gussie A. Niles was the physician who attended the plaintiff following the latter's injury and became one of her witnesses. During Dr. Niles' direct examina-

tion, she suffered a paralytic stroke which forced her to withdraw from the witness stand. She died two days later without testifying further. When the defendant refused to waive her right to cross-examine Dr. Niles, the trial judge, upon his own motion, struck all of her testimony from the record.

We shall now consider the first assignment of error.

January 14, 1946, the automobiles of the plaintiff and the defendant collided. The plaintiff claims that in the impact she suffered personal injury and damage to property. Thereafter she filed this action which charged the defendant with negligence. The part of her complaint which averred her personal injuries included eleven items, among which was "fractures of the skull."

At the trial, the plaintiff became the first witness and, after describing the collision, gave an account of her injuries. She mentioned, for example, a sizeable laceration upon her right leg and a fracture of the bones of her right wrist. She was then asked, and answered, as follows:

"Do you have any other condition there that came after this accident, or in the accident that wasn't there before that you yourself could see and observe?

"A. Yes, I had a fracture on the—right above the right eye and across my right temple, down across my right temple."

No motion was made to strike the answer. Upon cross-examination, the following occurred:

"Q. You said your skull was fractured; that is your testimony, is it?

"A. Yes, sir.

\* \* \*

"Q. And is that what you take to be the skull fracture?

"A. That is a skull fracture.

"Q. Do you have more than one?

"A. I think so.

"Q. Where is the other one?

"A. Over my left eye * * *."

Since the parties present no issue upon the subject, we express no opinion as to whether or not the plaintiff was qualified to testify that her skull was fractured. Evidently the plaintiff depended upon the testimony which we have quoted to establish the averment that, as a result of the collision, she incurred "fractures of the skull."

After the plaintiff had given her testimony, Dr. Niles became a witness for her and described the plaintiff's injuries. The only part of her testimony which is material to the assignments of error is the following, which pertains to some X-ray plates:

"Q. These were apparently taken around 3/21/46 up in the Salem Clinic. Is there anything about these that can be pointed out, medically, that is, of any significance that you can point out?

"A. Well, they are—
Mr. Spaulding: I can't quite hear you.

"Q. Pardon me; I said there is no pathology?

"A. That is right.

"Q. Pardon?

"A. That is correct.

"Q. No pathology of the brain?

"A. Yes.
Mr. Spaulding: I am not sure what she said.
Mr. Carson: She is studying.

"Q. (Mr. Carson, cont'd) I am sorry; we didn't hear you. You said there is no pathology of the brain?

"A. That is right.

"Q. Is that correct?

"A. That is right.

"Q. And from reading of these, do you detect any abnormality that looks like injury caused—

"A. No, nothing at all."

Those questions were succeeded by two others concerning the cause of unconsciousness. Before Dr. Niles answered the second, she said, "I am sorry; I will have to be excused." Then came her withdrawal from the witness stand, succeeded two days later by her death. It is seen from the foregoing that Dr. Niles had not completed her direct examination before she was compelled to retire from the witness stand.

After it became apparent that Dr. Niles could testify no further, the presiding judge conferred in his chambers with counsel for the purpose of determining what should be done with the testimony that Dr. Niles had already given. The record indicates that more than one conference was held and that in the interval some other witnesses testified. During the course of one of the conferences, according to the appellant's brief, "The Court had stated in chambers to counsel for the respective parties 'that the Court preferred not to declare a mistrial in view of the public expense of commencing the trial anew.' No motion for mistrial was made." When the trial judge had become satisfied that Dr. Niles' death was impending and that the parties could agree upon no course, he informed the jury that he had struck from the record all of the testimony which Dr. Niles had given, and then instructed them to disregard all of it. After that had been done, defendant's counsel objected "to the striking of the testimony of Dr. Niles in that it was favorable to the defendant." Then the trial judge addressed defendant's counsel: "I am going to ask Mr. Spaulding if he ex-

pressly waives the right of cross-examination", and received this reply: "The defendant feels that we cannot expressly waive the right of cross-examination." Thereupon the court abided by its previous order and informed the jury that Dr. Niles' testimony was withdrawn and must be disregarded. In that manner there was struck from the record, not only the part of Dr. Niles' testimony which we quoted, but also other parts in which she had described the plaintiff's injuries, such as a laceration upon the plaintiff's right leg, two cuts upon her forehead, a fractured wrist, shock, and the loosening of some teeth. The appellant does not complain because those parts were stricken, but, in attacking the order which struck the testimony, singles out the part concerning the X-ray photographs. She claims that that part contradicted testimony given by the plaintiff, which we have quoted, that her skull was fractured.

We deem it material to take note of the fact that in the part of the testimony which we quoted from Dr. Niles, she was not asked whether or not her examination of the plaintiff disclosed skull fracture, but merely to interpret the X-ray photographs. For instance, it will be observed, by reverting to the stricken testimony, that counsel handed to Dr. Niles some X-ray photographs and then asked her whether they indicated pathology of the brain. The situation was not dissimilar to that which occurs when a witness, familiar with a foreign language, is asked to interpret a letter written in that language. The record warrants the belief that Dr. Niles had not taken the X-ray photographs. There is no claim that she possessed special skill in interpreting X-ray photographs. Apparently any other physician who was capable of interpreting X-ray

photographs could have answered the questions propounded to Dr. Niles. The appellant's brief states:

"It is true that after Dr. Niles became incapacitated plaintiff then called Dr. C. A. Downs, who had briefly examined the plaintiff a few days before the trial at the request of defendant (Tr. p. 246) and it might be argued that since Dr. Downs also testified that there was no skull fracture revealed by any evidence that was submitted to him, then it became unimportant that the testimony of Dr. Niles was stricken. However, it must be kept in mind that Dr. Niles had treated plaintiff for a period of two months."

■ It is axiomatic that a party against whom a witness is called has the right to cross-examine the latter: *Mannix v. Portland Telegram*, 136 Or. 474, 284 P. 387, 297 P. 350, 300 P. 350. Circumstances for which no one was responsible prevented the appellant from cross-examining Dr. Niles, and that development confronted the presiding judge with the quandary we have mentioned. We quote the following from Wigmore on Evidence, 3d ed., § 1390:

"But, where the death or illness prevents cross-examination under such circumstances that *no responsibility* of any sort can be attributed to either the witness or his party, it seems harsh measure to strike out all that has been obtained on the direct examination. Principle requires in strictness nothing less. But the true solution would be to avoid any inflexible rule, and to leave it to the trial judge to admit the direct examination so far as the loss of cross-examination can be shown to him to be not in that instance a material loss."

The following is taken from 70 C. J., Witnesses, p. 618, § 788:

"Although the contrary has been held, the testimony of a witness, given on direct examination,

should be stricken out when the party against whom he testified is, through no fault of his own, deprived of the right to cross-examine him by reason of his death, or illness, or absence, or a mistrial ordered."

*Henderson v. Twin Falls County,* 59 Ida. 97, 80 P. 2d 801, *In re Sweeney's Estate,* 248 Wis. 607, 22 N. W. 2d 657, and *People v. Manchetti,* 29 Cal. 2d 452, 175 P. 2d 533, dealt with situations somewhat similar to the one before us. In the Henderson case, the court, on appeal, held that the trial judge acted within the scope of his powers when he struck from the record testimony given by a witness who died at the close of his direct examination. Before the testimony was stricken and the jury instructed to disregard it, a motion for a mistrial, made by the appellant, had been denied. The Sweeney case, which was tried without a jury, followed the rule stated by Wigmore. The Manchetti case, which was a criminal one, held that the defendant's acquiescence in a witness's request to be excused was not a waiver of the right to cross-examination, and that the witness's testimony given on direct examination should have been stricken when cross-examination became impossible. The text which we took from Wigmore was quoted with approval. In *State v. Bingham,* 133 S. C. 491, 131 S. E. 603, a homicide case, a witness for the prosecution, who had given material, damaging testimony, died before he could be cross-examined. The court held that a mistrial should have been directed. It said: "It was the duty of the court to act and not wait for a motion from the defendant."

 We do not think that it was essential that one of the parties should have made a motion to strike before the trial judge proceeded to dispose of the dilemma which confronted his court. A trial judge is not a mere

moderator and may, upon his own motion, withdraw from the consideration of the jury incompetent evidence: *First National Bank v. Home Insurance Co.,* 33 Or. 234, 52 P. 1055. The testimony which Dr. Niles gave was competent when it was received, but the lamentable circumstances which prevented the appellant from exercising her right of cross-examination, followed by her refusal to waive that right, rendered the testimony no longer competent. Two practical choices were available to the presiding judge: strike the testimony, or declare a mistrial, the purpose of the two being the same; that is, to rid the record of evidence which the rules do not permit the jury to consider. We think that the presiding judge was invested with discretionary power to take either course. If evidence which is no longer competent has a peculiar propensity to excite prejudice of such a deep-seated nature that an instruction to disregard it will be ineffective, a mistrial should be ordered. We are aware of no reason for believing that the instruction which was given to the jury to disregard all of Dr. Niles' testimony did not accomplish its intended purpose. In fact, the appellant does not claim otherwise. Her argument does not even concern itself with that phase of the issue. Her contention is that when Dr. Niles' testimony was stricken, she lost a part favorable to her. But she was not entitled to retain in the record the parts of Dr. Niles' testimony which she liked and at the same time lay the foundation for an assignment of error, in the event the jury's verdict should prove to be adverse. The very fact that the appellant had one eye upon this court when she chose to remain silent shows that the evidence, which she was hopeful might be kept in the record, was properly stricken. There is nothing in the record which indicates that a mistrial should have been declared, and

that the striking of the testimony did not suffice, accompanied, as it was, with instructions to the jury to disregard it. We conclude that the first assignment of error lacks merit.

We shall now consider the remaining, that is, the second assignment of error, previously quoted. It will be recalled that after conferences had been held in chambers, the trial judge told the jury that he had stricken Dr. Niles' testimony and that he then instructed the jury to disregard all of it. Before he took that course, he dictated into the record a brief explanation of what he was about to do. In it he included these words: "I assume that that (defendant's right of cross-examination) could be expressly waived, but it has not been expressly waived." No objection was made by the appellant to that statement, and it may be that it was spoken out of hearing of the jury. The purpose of the explanation appears to be clear; that is, to have the record show why Dr. Niles' testimony was stricken. Having made the explanation, the trial judge addressed himself to the jury and told them: "You folks on the jury are instructed to absolutely disregard any testimony which Dr. Niles gave yesterday." At the end of the instructions to the jury the defendant objected to the order which struck the testimony. Thereupon, as previously noted, the trial judge addressed defendant's counsel, "I am going to ask Mr. Spaulding if he expressly waives the right of cross-examination." The appellant's brief, referring to that inquiry, says: "This could not help but prejudice defendant with the jury, and put defendant's counsel in a position of appearing to obstruct the efforts of the court in trying to proceed, and of desiring to subject Dr. Niles to some sort of rigorous cross-examination in the helpless condition

that the jury saw she was then in." The record indicates that when defendant's counsel made his reply he did so out of the hearing of the jury. His reply, as stated in a previous paragraph, was: "The defendant feels that we cannot expressly waive the right of cross-examination." At the conclusion of the colloquy, the trial judge affirmed his previous order, and in so doing admonished the jury to "try this case solely upon the evidence that comes from the witness stand and nothing else." He added, "So do not pay any attention to the remarks between Court and counsel."

It often occurs during a trial that the presiding judge says something incidental to a ruling which does not concern the jury, but which the latter possibly overhears. If the statement made by the judge pertains to the ruling, it seems reasonable to believe that the jury realizes that the statement was not intended for it, and that it respects the dual function which constantly goes on in trial by jury, in which the component parts— judge and jury—play their roles in the presence of each other, and yet wholly independent of one another.

 Whether a trial judge, in making his rulings, should retire to his chambers or make them in the presence of the jury is largely assigned to his good sense and discretion. We cannot believe that the jury which served in the instant case was of such inferior intelligence and so abandoned to base prejudices that it took umbrage at the defendant when it heard that she had declined to waive her right to cross-examine Dr. Niles. But, if we assume that the words of the trial judge which indicated to the jury that the defendant had refused to waive her right to cross-examine Dr. Niles should not have been spoken in the jury's presence, that alone would not suffice to constitute reversible error.

Remarks by a trial judge in the presence of the jury are ground for reversal only when improper and when it can be seen that prejudice resulted to the appellant: *Sertic v. McCullough,* 155 Or. 216, 63 P. 2d 884; *Hooper v. Pennick,* 102 Or. 382, 202 P. 743; *Miller Lumber Co. v. Davis,* 94 Or. 507, 185 P. 462, 185 P. 1107; *Hoag v. Washington-Oregon Corp.,* 75 Or. 588, 144 P. 574, 147 P. 756; 5 C. J. S., Appeal and Error, § 1712, p. 909. Normally, the effect of an improper remark made by the trial judge is deemed cured by its withdrawal and a caution to the jury to disregard it: *Santoro v. Brooks,* 121 Or. 424, 254 P. 1019; *Richardson v. Portland Trackless Car Co.,* 113 Or. 544, 233 P. 540; *Verrell v. First National Bank,* 80 Or. 550, 157 P. 813. For the following reasons we do not believe that this assignment of error reveals any error: (1) The challenged words of the trial judge were appropriate to the function which he was called upon to perform; (2) we know of no reason for believing that the information which his words gave to the jury hurt the defendant in the jury's estimation; and (3) the challenged words were followed immediately by others, also spoken by the trial judge, which told the jury to disregard all exchanges between Court and counsel and to try the case solely upon the evidence. We reject this assignment of error as without merit.

The challenged judgment is affirmed.