Argued August 23, affirmed October 8, 1973

# STATE HIGHWAY COMMISSION, *Appellant, v.*
# CARMEL ESTATES, INC., *Respondent.*

514 P2d 1124

*John W. Osburn,* Solicitor General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and Leslie B. Hampton, Assistant Attorney General, Salem.

*Gary M. Bullock,* Portland, argued the cause and filed the brief for respondent.

Before LANGTRY, Presiding Judge, and FORT and THORNTON, Judges.

THORNTON, J.

The State Highway Commission brought a condemnation proceeding to acquire in fee simple a right of way running diagonally across defendant's① real property. Defendant's property is located in north Clackamas County, and abuts the intersection of the Boring-Clackamas Road and the Mt. Hood Highway on the south side. The purpose of the right of way was to construct a lateral access road to connect the Boring-Clackamas Road with the Mt. Hood Highway.

After jury trial defendant obtained a verdict and judgment for $120,000 plus attorney fees.

Plaintiff appeals from that judgment contending that the trial judge erred:

(1) In commenting to the jury on the evidence;

(2) In denying plaintiff's motion for mistrial on account of the above comment;

(3) In refusing to give plaintiff's requested in-

---

① Plaintiff named a substantial number of additional defendants in its complaint. Only Carmel Estates, Inc., and Clackamas County filed answers. The county did not appear by counsel at trial.

For purposes of this appeal we will refer to Carmel Estates, Inc., as if it were the sole defendant in this case.

struction with respect to the effect of probability of zone changes on the supply and demand for commercial property; and

(4) In sustaining an objection by defendant, and refusing to permit plaintiff's counsel to comment in argument on the failure of the secretary of the defendant corporation to testify as to the value of the subject property.

Prior to the taking (5.04 acres), defendant's tract consisted of some 26 acres. Approximately 11 of the 26 acres were zoned commercial. Fifteen acres were zoned multi-family.

As shown on the drawing reproduced opposite, the strip taken for the lateral access road generally parallels the Mt. Hood Highway and is only a very short distance to the south thereof. A small strip of defendant's land (3.49 acres) remains between the condemned strip and the Mt. Hood Highway. Thus the bulk of defendant's remaining property is located south and west of the condemned strip. Under the taking defendant was allowed two access points on each side of the connecting road to serve defendant's remaining property.

At trial defendant elected to proceed first with its testimony and presented two valuation witnesses, Mr. Pyle and Mr. Frank. The plaintiff used one valuation witness, Mr. Kolberg. Testimony of these witnesses differed only in degree as far as the highest and best use of the subject property was concerned. Mr. Pyle testified that the highest and best use of the 3.49 acres adjacent to the Mt. Hood Highway was for commercial development, viz., for a restaurant and two service stations. He testified that the highest and best use of the remaining commercially-zoned land

Boring Rd.

Mt. Hood Highway

3 Acres

3.49 Acres

14.45 Acres Multi Residential

Subject Property After Taking

Epperson Rd.

N

was for future commercial purposes and that the balance of the land had a future potential for multi-family development where sewers were available. Mr. Frank's testimony was substantially the same, although he envisioned a motel on the subject property in the relatively near future.

Mr. Kolberg, the state's witness, was of the opinion that the commercially-zoned portion of the

property had a potential for present and long-range commercial development as the demand warranted. His opinion was that the highest and best use of the remaining portion of the property was residential.

Defendant's evidence was that there were only three properties between Gresham and Sandy that were zoned to allow commercial development, and that the subject property was the most likely prospect for future development. This theory was set forth in defendant's opening statement. Mr. Pyle so testified. He further testified that it was not probable that additional properties could be rezoned for commercial use along the Mt. Hood Highway between Sandy and Gresham. Upon objection Mr. Pyle was not permitted to testify as to his version of the specific provisions of the Clackamas County comprehensive zoning.

Mr. Frank also testified that the subject property was one of only three commercially-zoned properties between Sandy and Gresham. The court allowed Mr. Frank to testify over objection as to his version of the comprehensive plan and how it affected properties in the area of the subject property.

Defendant also offered evidence that there had been no zoning changes in the area since 1966 and 1967.

During plaintiff's case, Mr. Kolberg, the state's expert, testified that in his opinion zone changes could be obtained on the subject property. He testified as to his investigation of the probability of obtaining zone changes. He stated that he had investigated the matter with a Mr. Cato, a member of the planning commission staff, with reference to the property directly across Boring Road to the north of the subject prop-

erty. He also testified about the historic zone changes that had actually occurred in the area. He was then asked concerning how the probability of rezoning would affect the subject property and its value. At this point defendant's counsel objected. The court stated:

"Well, the thing is you haven't objected to all their testimony about these other zone changes and that is the most speculative type of testimony I have heard. I will sustain the objection."

After arguments in chambers, the court advised the jury, "* * * You disregard any comment I made or any remarks I might have made, ladies and gentlemen." The trial then continued, and Mr. Kolberg was permitted to testify that if a zone change to a commercial zone were obtained as to the remaining property, that property would increase in value. He did not, however, specify the amount of such increase.

At the next recess plaintiff moved for a mistrial based on the court's original comments and the court's alleged failure to cure the prejudicial aspect of the comment. The court denied that motion.

As a part of defendant's case Mr. Paul Federici, corporation secretary and one of two principal owners of Carmel Estates, Inc., testified that he was in charge of developing the property and had obtained a zone change for portions of the subject property. He further testified that he had prepared an over-all development plan for the property and had negotiated with oil companies for the sale of sites. He testified that he had reviewed comparable sales and introduced a map showing locations of claimed comparable sales properties. He also was involved in the right of way negotiations for the property and discussions with the highway engineering personnel regarding the taking.

Mr. Federici was allowed to testify that four appraisers had purported to appraise the property for the plaintiff State Highway Commission.

In his initial closing argument to the jury defendant's counsel criticized the plaintiff severely for its failure to call the other appraisers as value witnesses. Thereafter plaintiff's counsel in argument sought to comment on Mr. Federici's failure to testify as to value, but on objection was not allowed to do so.

Plaintiff's first three assignments will be discussed together inasmuch as they are interconnected.

■■■ Plaintiff argues that it was entitled to show that "reasonably probable zone changes" of property in the same area of the subject property affected the fair cash market value of the subject property. We agree. Therefore the trial court's comment that the testimony which plaintiff claims tended to establish these facts was "the most speculative type of testimony I have heard," was improper. *Frangos v. Edmunds,* 179 Or 577, 173 P2d 596 (1946). However, immediately following the court's remark, plaintiff's counsel asked to be heard in chambers. After hearing counsel's arguments, the court reversed itself and promptly instructed the jury to "disregard any comment I made." We believe this instruction served to cure the court's prejudicial remark. *Best v. Tavenner,* 189 Or 46, 218 P2d 471 (1950). Moreover the record shows that defendant's counsel did not move promptly for a mistrial. It was not until testimony which consumed some 46 pages of the transcript had been given and the afternoon recess had been completed and trial resumed that defendant's counsel moved for a mistrial on account of the court's earlier remark. When a party has knowledge during the trial of irregularity or misconduct he

must assert his right to mistrial immediately. *See, Raymond v. Southern Pacific Co.*, 259 Or 629, 488 P2d 460 (1971). We conclude therefore that the trial court did not abuse its discretion in refusing to grant plaintiff's subsequent motion for a mistrial. *State v. Fitzgerald,* 154 Or 182, 58 P2d 508 (1936).

■ Next we consider the court's refusal to give plaintiff's requested instruction with respect to the effect of the probability of zone changes on the supply and demand for commercial property.

As we have already stated, plaintiff was entitled to show by proper testimony that reasonably probable zone changes of property in the area affected the fair cash market value of the subject property. *Highway Commission v. Oswalt,* 1 Or App 449, 463 P2d 602 (1970). According to the record, however, plaintiff did not offer any direct, probative evidence as to the extent to which such changes would affect the market value of the property.

The only testimony of the possibility or probability of a zone change offered by plaintiff was by Mr. Kolberg, who testified as follows: That an assistant at the county planning commission had informed him that a zone change could probably be obtained as to defendant's remaining property; that directly across Boring Road to the north of the property being taken (a parcel of property which was sold by Lester Jones to Robert Thompson in January 1971) there had been a zone change request to a commercial zone, which had received favorable consideration; that his appraisal of the property condemned was based on the existing zoning with no consideration being given for a future or present probability or possibility of changing to a commercial zone; and that the zone change was a prob-

ability and "It's not there." He said he felt the appraisal should be made on the basis of the existing zoning.

James Hall, the Clackamas County Planning Director, was thereafter called by defendant and testified as follows:

"Q Has Robert Thompson ever applied for a zone change?

"A No.

"Q What is the Thompson property zone?

"A The Thompson property is zoned residential, RA-1."

Later during the same examination by defendant's counsel, Mr. Hall testified as follows:

"Q Have there been any applications to subsequently change the zoning along Highway 26 to commercial?

"A There have been development pattern requests along there, yes.

"\* \* \* \* \*

"A \* \* \* I had a development pattern request for an individual by the name of Robert Thompson which is on the southwest side, basically west side, of Highway 26 between Highway 26 and Highway 212. That was first filed in March of this year and the application [sic] that was not present and it never did get back on the agenda by lack of his action.

"\* \* \* \* \*"

It appears, therefore, that plaintiff's evidence was not sufficiently specific and definite to enable a jury to do anything but speculate as to the actual extent to which such zoning changes would affect the fair cash market value of either the subject property or the adjacent properties.

Moreover the trial judge did instruct the jury:

"* * * However, if from the evidence you find there is a reasonable probability of a change in the near future of zoning ordinances then the effect of such probability of change and permissible use of the property may be taken into consideration in determining the highest and best use of the property.

"If, however, such change in the zoning ordinance is merely a possibility or speculative at best then only such use as is permitted under the ordinance may be considered by you."

We conclude that plaintiff has no basis for complaint on account of the trial court's refusal to give plaintiff's requested instruction.

Plaintiff's final assignment is that the trial judge erred in refusing to permit plaintiff's counsel to comment in argument on the failure of Mr. Federici, the secretary of the defendant corporation, to testify as to the value of the subject property.

■■ In determining prejudicial effect of error the appellate court looks to the entire record. *Frangos v. Edmunds,* supra. A ruling, in order to warrant reversal, must not only be erroneous, but also must be prejudicial. *Edvalson v. Swick,* 190 Or 473, 227 P2d 183 (1951).

We are of the opinion that the above ruling by the trial judge was error but not reversible error. *Edvalson v. Swick,* supra.

■ It is true that the rule in this state is that a corporate officer is not, ipso facto, entitled to testify as to the value of corporate real property without a showing of special qualifications. *Highway Com. v. Assembly of God et al,* 230 Or 167, 368 P2d 937 (1962).

However here the record shows that Mr. Federici had sufficient knowledge to be able to testify had he been asked by either counsel. Defendant did not choose to call Mr. Federici as an adverse witness. Also we note that Mr. Federici, as respondent's secretary, had verified the answer on behalf of defendant in which it was alleged, inter alia, that defendant contended that the value of the property taken was $196,000. We presume that during its deliberations the jury had this pleading with it, in accordance with ORS 17.320.

When defendant's counsel criticized plaintiff for failing to call all of the state's experts who had actually appraised the property for plaintiff, some of whom were in attendance during the trial, plaintiff's counsel sought to rebut this argument by pointing out that defendant's counsel also had not utilized all the valuation testimony available to him.

■ We believe the court should not have prevented plaintiff's counsel from making this type of argument in rebuttal, for whatever benefit it might afford plaintiff. This limited restriction in the scope of plaintiff's oral argument, however, would not justify overturning the verdict for defendant and ordering a new trial. *Edvalson v. Swick,* supra.

Affirmed.