## JONES,
*Respondent,*

*v.*

## SILADIC et ux,
*Appellants.*

## (No. A7809-15237, CA 17724)

629 P2d 875

Stephen D. Krohn, Portland, argued the cause and filed the briefs for appellants.

John W. Hitchcock, McMinnville, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

## WARREN, J.

In September, 1978, plaintiff brought an action against defendants for waste, trespass and conversion and prayed for both general and punitive damages. On June 29, 1979, a default order was entered against defendants for failure to file an answer, and judgment was entered on the default for both general and punitive damages. Subsequently, in August, 1979, the default was set aside and defendants filed an answer to plaintiff's second amended complaint.

Thereafter plaintiff, pursuant to a stipulation, filed his third amended complaint on November 6, 1979. Defendants' motion against the third amended complaint was denied. On January 17, 1980, defendants' attorneys applied for and were granted leave to withdraw as attorneys of record, and counsel for plaintiff then wrote directly to the defendants as follows:

"As you know, I represent Philip Jones in his lawsuit against you. By order of Circuit Judge Charles Crookham, your former attorneys, Bouneff, Muller & Marshall, were allowed to withdraw from your case. This is to advise you that the case is set for trial April 25, 1980 at 9:00 AM; this is a *firm* trial date.

"If you fail to appear, Philip Jones intends to secure a default judgment against you. If you intend to retain another attorney, you should do so *immediately.*

"Sincerely,

"John W. Hitchcock"

Defendants did not retain counsel and did not file an answer to the third amended complaint. On April 9, 1980, plaintiff sent defendants a notice of application for default, which defendants received on April 11, 1980. Defendants still failed to retain an attorney and still filed no answer to the third amended complaint. On April 16, 1980, a default order was entered. Defendants then retained their present counsel, who moved to set aside the default on April 22, 1980, contending that the case was, in fact, at issue, that defendants were not in default and that, therefore, the default order was improperly allowed. Defendants' attorney conceded on oral argument before this court that he did not check the circuit court file before

filing and arguing the motion to set the default aside, because he assumed from the fact that a trial date had been set that the case was at issue.

The court denied the motion and on April 24, entered findings of fact and conclusions of law after a prima facie hearing on unliquidated damages. The plaintiff was awarded in excess of $49,000 in general damages, punitive damages and costs. Thereafter, apparently after having consulted the circuit court file, defendants filed a motion for reconsideration on May 1, in which they asserted that the default was taken due to defendants' inadvertence, surprise, mistake or excusable neglect and that the default judgment should be set aside under the provisions of ORS 18.160.[1] With the motion for reconsideration, the defendants offered the affidavit of a circuit court file clerk and the affidavit of Mrs. Siladic. In her affidavit, Mrs. Siladic asserted that defendants were misled by plaintiff's attorney's letter of February 19. The affidavits indicate that upon receipt of the letter of February 19, Mrs. Siladic consulted an employee of the Multnomah County Clerk's office, who advised her that trial was scheduled for April 25. Mrs. Siladic's affidavit alleges that she showed the county clerk the February 19 letter and

" * * * asked what was going on in the case. She looked up the matter and found that there was a date certain trial for April 25, 1980. Having found out that the trial was still scheduled, I assumed that was the date upon which my husband and I had to have an attorney and be ready to proceed.

"The document I received from Mr. Hitchcock did not tell me that there was going to be a dead line [sic] for me to respond to it nor did it set forth any place that I should appear.

"My former counsel, Mr. Robert Bouneff, impressed upon both myself and my husband the necessity for us to appear at our April 25, 1980 trial date. Additionally, the plaintiff's attorney, Mr. Hitchcock, sent my husband and

---

[1] ORS 18.160 provides:

"The court may, in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, decree, order or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect."

myself a letter stating we had to show up at the April 25, 1980 trial date as well. With all the people impressing this date on us, we were fully prepared to have hired legal counsel and be ready to proceed on that date."

The motion for reconsideration was denied.

■     Given the history of this litigation and the fact that the defendants had previously had a default order and judgment set aside, it is understandable why the trial court declined to accept defendants' explanation as to why they failed to file an appearance. On appeal, defendants urge upon us matters which were not called to the trial court's attention as reasons why the default judgment should be set aside. Specifically, defendants failed to call to the attention of the trial court their claim that plaintiff failed to serve on them the order denying their motion to make more definite and certain, the event which would trigger defendants' duty to file a further appearance. They also contend on appeal that the default order was prematurely taken under Multnomah County Circuit Court Rule 7.03[2] and ORCP Rule 10.[3]

---

[2] Multnomah County Circuit Court Rule 7.03 provides in part:

"(1) A default judgment shall not be allowed where a general or special appearance or where a motion of any nature has been filed by the party against whom the default judgment is sought without satisfactory evidence that written application for such default judgment has been served * * * upon the party himself where the party appears in person. In either case, the applicant for a default judgment shall wait five days after service of such application before applying to the Court for a default judgment.

"(2) If service of the application for default judgment is not made in person, it shall be made by registered or certified mail, addressed to the last known address as shown by the record, or if the record does not show, then to the last known address. * * * "

[3] ORCP Rule 10 provides in part:

"A. In computing any period of time prescribed or allowed * * * by the local rules of any court, * * * the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included. * * * When the period of time prescribed or allowed is less than 7 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation. * * *

" * * * * *

"C. Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon such party and the notice or paper is served by mail, 3 days shall be added to the prescribed period."

A decision of the trial court declining to set aside a default judgment will be reversed by an appellate court only for a manifest abuse of discretion. *Fleetwood Investment v. Thompson,* 270 Or 584, 528 P2d 518 (1974). Appellate courts of Oregon have consistently held that matters argued in appellant's brief but not presented in the circuit court should not be considered on appeal, absent special circumstances. *Travelers Indemn. v. American Ins.,* 278 Or 193, 199, 563 P2d 684 (1977). On the facts of this case, we do not find that there was an abuse of discretion requiring reversal.

■     Defendants, however, contend that even if the trial court did not abuse its discretion in failing to set aside the default, the case must be remanded for further proceedings, because at the time of the prima facie hearing defendants requested an opportunity to cross-examine plaintiff's witnesses concerning the amount of unliquidated damages. The trial court declined to permit the defendants to participate in the hearing.

On appeal, defendants rely on ORS 18.080(1)(b), which provides:

" * * * the clerk, upon written motion of the plaintiff being filed, shall enter the default of the defendant, and thereafter the plaintiff may apply to the court for the relief demanded in the complaint. The court shall, upon such application, give judgment for the amount prayed for in the complaint, or the relief demanded in the complaint, unless it is necessary, to enable the court to give judgment or carry the same into effect, to take proof of any matter of fact, in which case the court may order the entry of judgment to be delayed until such proof is taken. The court may hear the proof itself, or make an order of reference, or that a jury be called to inquire thereof. Thereupon, the court shall enter judgment in accordance with its own findings, or the verdict of the jury; *provided, however, that in all cases where the cause of action is for unliquidated damages, if a jury is demanded by either party to assess the damage, the court must grant such jury trial.* If neither party demands a jury the damage may be assessed by the court." (Emphasis added.)

A predecessor statute to ORS 18.080(1)(b) provided, in relevant part, that:

"The court may hear the proof itself, or make an order of reference to hear and report the testimony. *The defendant shall not be precluded, by reason of his default, from offering proof in mitigation of damages.* (Emphasis added.) Annot. Codes & Stat. of Oregon, ch 11, § 185(2) (Bellinger & Cotton 1902); former Hill's Code, § 249 (1892).

In 1892, the Oregon Supreme Court held that the earlier statute cited plainly provided that only the court could assess damages after a default and that this was not violative of the constitutionally-protected right to a trial by jury in civil cases. *Deane v. Willamette Bridge Co.,* 22 Or 167 (1892). The legislature, however, in 1909, revised section 185 to allow either party to demand the benefit of a jury trial on the assessment of unliquidated damages after default. The provision allowing a defendant to offer proof in mitigation of damages was deleted from the statute at that time.

■      Plaintiff contends that the deletion from the statute of the specific right to offer proof in mitigation of damages precludes defendant from asserting a right to cross-examine witnesses. We do not agree. By granting the parties the right to a jury trial, the right to cross-examine witnesses is inherently included. The opportunity of cross-examination is an essential safeguard of the accuracy and completeness of testimony, and it is a right and not a mere privilege. McCormick, Evidence 43, § 19 (2d· ed 1972). It is axiomatic that a party against whom a witness is called has a right to cross-examine the latter. *Best v. Tavenner,* 189 Or 46, 53, 218 P2d 471 (1950).

While the defendants did not specifically request a jury trial on the matter of damages, they were present at the hearing and were at least entitled to do that which they requested, *i.e.,* cross-examine the plaintiff's witnesses on the issue of unliquidated damages. Accordingly, the court's order declining to set aside the default order is affirmed; the judgment for money damages is reversed and remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed in part; and remanded for further proceedings.